**M. Rudolph PREUSS, Trustee in Bankruptcy of Crosby Teletronics Corp., Plaintiff,**

v.

**GENERAL ELECTRIC CO., Inc., Defendant.**

**Civ. No. 64–C–913.**

United States District Court
E. D. New York.

May 3, 1967.

Kenyon & Kenyon, New York City, for plaintiff; Hugh A. Chapin, Lloyd McAulay, New York City, of counsel.

Davis, Hoxie, Faithfull & Hapgood, New York City, for defendant; John Hoxie, William S. Wolfe, James W. Bock, New York City, of counsel.

BRUCHHAUSEN, District Judge.

This is an action for infringement of a patent. The application therefor was filed in the Patent Office by Mr. Murray G. Crosby on April 21, 1953 and granted under Patent No. 2,851,532 on September 9, 1958. The claims relied upon are numbered 10, 12, 16, 18, 22, 24 and 25. Claims numbered 12, 16 and 24 relate to receiving equipment. Claims numbered 10, 18 and 22 allude to transmitting equipment and claim number 25 pertains to equipment for the adapting of a monophonic receiver, producing stereophonic signals in a stereo manner. The defense is invalidity of the patent.

Between the period of his graduation as an electrical engineer, in or about the year 1925, and the spring of 1953, when he filed his application for the subject patent, Mr. Crosby devoted his talents to the electronic communications field, specializing in FM communications. In the first nineteen years of that period, he was employed by the Radio Corporation of America at its receiving station for transocean communications. He assigned a number of patents to the said corporation. Thereafter, he continued the same type of endeavor with several other concerns and in 1948 organized his own company. Early in 1951, his company entered into an eighteen months contract with the United States Naval Department to devise an FM Multiplex System for a special one-way disaster type of communication. He testified that this occupation immersed him and his associates in considerable multiplex research and thinking on the subject matter of the patent in suit. (R. 304–310). Mr. Crosby then conducted numerous experiments, with the object of producing practical equipment, acceptable to the industry. He eventually devised a system, which he named "Multiplex Communication System", culminating in the subject patent. His invention relates to a multiplex communication system and more particularly to the binaural transmission and reception of sound. He was aware of the contribution to the art, made by Major Armstrong, set forth in his 1933 patent, teaching the advantages of wide-band FM radio broadcasting.

On June 15, 1953, a few months after he filed his application for the subject patent, he was invited to address the American Institute of Electrical Engineers. His subject was "Binaural Sound on One FM Channel." (R. 314; Exh. 29).

That presentation comprised the results of the measurement of the material, recorded from his experiments. (R. 316).

Exhibit 29 includes, in substance, the disclosure in the subject patent application.

In December 1953, Mr. Crosby was invited to address the Institute of Radio Engineers on the same subject. (R. 317).

During that year, he gave demonstrations illustrating his new broadcasting technique to a Sylvania engineer, as well as to a large assemblage of representatives of the National Broadcasting Company and Radio Corporation of America, including Mr. Charles Dennings, a former chairman of the Federal Communications Commission and then a vice-president of National Broadcasting Company. (R. 319).

On October 11, 1957, by invitation, Mr. Crosby addressed the Audio Engineering Society on the subject entitled "A Compatible System of Stereo Transmission by FM Multiplex." (R. 323).

Under date of October 25, 1957, Mr. Jerry A. Meyer, an employee of the defendant's Radio Receiver Department, wrote Mr. Crosby for a copy of the aforesaid address, and he also sent a copy of his letter to Mr. W. H. Beaubien, another employee of the defendant.

Mr. Meyer therein stated:

"We are interested in obtaining a copy of the paper you presented at the Convention (alluding to the said Audio Engineering Society) and any other information which you feel would help us gain a background in FM multiplexing."

On October 31, 1957, Mr. Crosby sent him a copy of the address. (Exh. 30).

In the summer of 1958, the first broadcast under Mr. Crosby's system ensued. (R. 330).

During the years 1958 to 1961, Mr. Crosby was invited by engineering societies throughout the United States and in Canada to demonstrate his multiplex system and he complied.

In October 1966, he received an award, set up by The Bell Telephone Laboratories, to the individuals, contributing in the field of telecommunications. A committee, selected by the Institute of Electrical and Electronic Engineers, recommended this award.

The citation mentioned that it was "for his pioneering work in the circuit technology, propagation characteristics and noise suppression of frequency and phase modulation."

These invitations from experts and the demonstrations are some evidence that Mr. Crosby had produced a system, not then obvious to them.

Characteristics of the subject patent not found in the prior arts, are:

1. Monophonic compatability. This system provides for stereophonic transmission and reception together with balanced and undistorted reception by the monophonic receiver;

2. Balanced noise. A main problem in FM stereo broadcasting is that one of the transmitting channels is noisier than the other. The system in suit overcame this noise in balance by equalizing the noise output in both channels;

3. High Fidelity with complete separation at all frequencies. The system gives the listener full frequency range without any cut-offs and thus provides the listener with the benefits he would receive if he were present at the live broadcast. It also provides for complete stereo separation in both channels;

4. Bandwidth. It achieved the above within the bandwidth rules of the Federal Communications Commission.

The defendant challenges the sufficiency of the patent upon the ground of want of invention in view of the prior art and of what was common knowledge to those skilled in the art, prior to the date of the alleged invention.

■ Section 35 U.S.C. § 282, one of the sections of the Patent Act of 1952, provides that "[a] patent shall be presumed valid. The burden of establishing invalidity of a patent rests on a party asserting it." The burden upon a defendant, seeking to invalidate a patent for want of novelty, is very heavy. "[E]very reasonable doubt should be resolved against him." Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 54 S.Ct. 752, 78 L.Ed. 1453; Mumm v. Joseph E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983; Georgia-Pacific Corp. v. United States Plywood Corp., 2 Cir., 258 F.2d 124, 132.

The defense introduced evidence of prior art, thereby attempting to establish that the system devised by Crosby was old, and, therefore, obvious to those skilled in the art. The prior art indicates knowledge of the elements, combined in the Crosby system. However, those so skilled were unable to combine the elements as did Crosby in his single electronic system. He was confronted with the same obstacles and problems of FM stereo as were others devoting attention to the art. However, his ingenuity and efforts solved these problems. As stated, when he publicly demonstrated his system, he was acclaimed by those engaged in the art. Some twenty years had then elapsed since Major Armstrong opened the field of FM broadcasting and no one in the art appeared capable of producing the system now under attack during those two decades. It is apparent that the idea was not obvious, but novel. A real need for transmission and reception of FM stereo was fulfilled by the Crosby patent.

■ The applicable rule as stated in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S.

147, at page 151, 71 S.Ct. 127, at page 130, 95 L.Ed. 162, is:

> "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

The Court further stated, at page 152, 71 S.Ct. at page 130:

> "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics."

Although those skilled in the art were experimenting in the field of communications, no one other than Crosby assembled or produced a system such as the one now under attack. As stated by Judge Learned Hand in B. G. Corporation v. Walter Kidde & Co., Inc., 2 Cir., 79 F.2d 20, the act of selecting materials and assembling them in such a manner, proving serviceable to a given need may require a high degree of originality. It is the act of selection which is the invention, and it must be beyond the capacity of common-place imagination. See, also, Van Heusen Products, Inc. v. Earl & Wilson, D.C., 300 F. 922; Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530. Mr. Crosby produced results never before achieved.

The commercial success must also be viewed in the light of the long-continued public acquiescence in the validity of the patent. The advent of FM stereo was responsible for creating many license agreements and the sale of the necessary equipment. Such commercial success is an important factor. Technical Tape Corp. v. Minnesota Mining & Manufacturing Co., 2 Cir., 1957, 247

F.2d 343; cert. den. 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529.

The Court upon reviewing the voluminous record, the exhibits, briefs and applicable law concludes that the credible evidence clearly establishes that the Crosby system is a new and useful product, within the meaning of the statutes and authorities and that the patent is valid.

Settle findings and decree on notice, on or before May 25, 1967.