W. A. BAUM CO., Inc., Plaintiff,

v.

PROPPER MANUFACTURING CO.,
Defendant.

No. 70 C 183.

United States District Court,
E. D. New York.

April 4, 1972.

Pennie, Edmonds, Morton, Taylor & Adams, New York City, for plaintiff; Willis H. Taylor, New York City, of counsel.

Blum, Moscovitz, Friedman & Kaplan, New York City, for defendant; James K. Silberman, New York City, of counsel.

BRUCHHAUSEN, District Judge.

This is an action for infringement of Plaintiff's Design Patent No. 203,491. It is for a "Wall-Mounted Sphygmomanometer." It was filed April 13, 1965 and granted under Patent No. Des. 203,-491 on January 11, 1966.

The plaintiff seeks an injunction against continued infringement of said patent and an accounting. The defendant seeks judgment and a decree that the patent is invalid and has not been infringed.

The distinctive features of the patent are disclosed in Plaintiff's Ex. 1 in evidence as:

1.  A sheath element having a uniformly constant parabolic cross section and contour throughout its entire length with a scale bearing numerals and a recessed calibrated tube arranged and supported at the front of the sheath element (Figs. 1, 4, 5).

2.  A wall-mounting bracket upon which the said sheath element is swivel-mounted for rotation through a wide arc about an axis of the element adjacent the apex of the curved portion at the rear thereof (Figs. 2, 3, 4, 5).

3.  An extension hose inflation tube connected at the lower end of the element serves to rotate the sheath element on its swivel mounting toward the operator in response to pull on the hose inflation tube, thus providing easy visibility of

the scale numerals and the calibrations on the tube (Figs. 1, 2, 5).

This instrument is a mercury sphygmomanometer, that measures blood pressure. It may be attached to a wall between two bed patients and because of its unique design, may be moved from side to side by a slight tug, applied to the extension base attached to the bottom of the instrument. The wall bracket is stationary, once it is applied to the wall. The parabolic sheath, containing all of the essential components for measuring blood pressure, moves in an arc as above indicated, for easy reading by a medically trained person. A viewing of instruments, namely, Plaintiff's Exs. 4 and 6 and Defendant's Exs. A and C clearly indicate that both instruments are substantially identical. The variations in the designs, if any, are minor. The evidence also adduced substantially increased plaintiff's sales, apparently as a result of this newly designed instrument.

The defendant introduced ten prior art references, namely Exhibits J-S inclusive, contending that Plaintiff's patent is invalid as being obvious under 35 U.S.C. § 103. The Court has viewed those Exhibits and concludes that although they include blood pressure measuring devices, they do not resemble plaintiff's instrument. Plaintiff has also introduced Exhibits 14 and 15 into evidence, two additional blood pressure measuring instruments, that are also of the swivel type with a permanent wall bracket. A casual observation indicates a lack of similarity in design although the essential elements are enclosed and the extension base is attached to the bottom of the instruments.

The test of infringement for a design patent is pronounced in Gorham Company v. White, 1871, 14 Wall, 81 U.S. 511, 20 L.Ed. 731, where the Court held in part, at page 528:

"If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

See also Tappan Co. v. General Motors Corp., 6 Cir. 1967, 380 F.2d 888, 891; Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., D.C., 274 F.Supp. 157, 160, 161; Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 2 Cir., 260 F.2d 637, 641. It is also true that design patents are generally governed by the same principle applying to other patents. Hygienic Specialties Co. v. H. G. Salzman, Inc., 2 Cir., 1962, 302 F.2d 614; Blisscraft of Hollywood v. United Plastics Co., 2 Cir., 1961, 294 F.2d 694.

Patents for designs, 35 U.S.C. § 171, states:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

This section mandates that a design patent must be both ornamental and novel. It must also meet the standard of novelty, as commanded by 35 U.S.C. § 102. Similarly applicable to design patents is 35 U.S.C. § 103, Conditions for patentability; non-obvious subject matter:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The plaintiff in its post trial brief urges in part at page 29:

"By providing a uniformly constant parabolic contour for the sheath element throughout its entire length as illustrated in Plaintiff's Design Patent (PX 1) and as embodied in Plaintiff's unit (PX 4) not only are clean continuous lines achieved, but an enclosure is provided wherein the mercury reservoir may be mounted therewithin out of view, thus achieving an uncluttered simplicity in appearance which may be said to be streamlined."

The defendant urges that this design patent was obvious to those having ordinary skill in the art and did not rise to the dignity of invention.

The Court agrees with the contentions of the defendant.

This Court has stated that although the prior art does not resemble plaintiff's design, the essential elements are not novel. An examination of the exhibits of the relevant prior art finds various similarities of the elements. The sole substantial change is the housing or sheath produced by plaintiff that contains all the essential elements to obtain a blood pressure reading. The idea was not a significant advance or improvement over the prior art. An idea for a valid patent and a subsequent monopoly, must be original as well as ornamental, Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545; Trimble Products Incorporated v. W. T. Grant Company, D.C., 283 F.Supp. 707, affirmed 2 Cir. 1968, 404 F.2d 344.

In affirming the judgment in the Trimble case, supra, the Circuit Court held in part at page 345:

"The Supreme Court explained in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, * * * the purpose of 35 U.S.C. § 103 was to codify the judicially established principle first announced in Hotchkiss v. Greenwood, 11 How. (52 U.S.) 248, 267, 13 L.Ed. 683 (1851) that an invention is not patentable if 'the improvement is the work of a skillful mechanic, not that of an inventor.'"

In Rains v. Niaqua, Inc., 2 Cir. 1969, 406 F.2d 275, the Court held in part at page 278:

"In comparing plaintiff's design with prior art, we are aided by the guide laid down by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 * * *:

"While the ultimate question of patent validity is one of law [citing Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162 (1950)], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

" * * * The entire concept of obviousness is, no doubt, 'an elusive one, especially when applied to elements of design.' Hygienic Specialties Co. v. H. G. Salzman, Inc., supra, 302 F.2d at 618. However, we are not convinced that Judge Henderson erred in holding that plaintiff's design does not meet the statutory standard. It would not seem to be a great feat for a designer of average ability to combine features (1), (2), and (3), which are disclosed in the pools described above. * * *

"We are buttressed in this view by the instruction of the Supreme Court to 'scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.' Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95

L.Ed. 162 (1950). Indeed the standards are, if anything, stricter for combinations of design elements. See Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 260 F.2d 637, 642 (2d Cir. 1958) (dissenting opinion). * * * plaintiff's design is seen to be a mere adaptation of those features to the similar redwood type pools of the prior art."

■ The plaintiff produced evidence of very substantial commercial success as a result of this product. However, commercial success is at best secondary evidence in determining obviousness of an invention. Graham v. John Deere Co., supra, 383 U.S. 17, 18, 86 S.Ct. 684, 15 L.Ed.2d 545. Commercial success cannot establish patentability when the evidence of obviousness is strong. Continental Can Co. v. Old Dominion Box Co., 393 F.2d 321, 326 (2d Cir. 1968). The same is true with regard to evidence of a long felt need in the industry.

The Court is further convinced that plaintiff's instrument lacks invention when it views plaintiff's Exhibits 14 and 15. These two competing sphygmomanometers do not infringe plaintiff's design, and was so testified to during the trial. Both these instruments have a permanent bracket to hold the instrument to a wall. The coiled rubber is attached to the bottom of the instrument and both have a recessed face from which a pressure reading may be ascertained. The Court is impressed with plaintiff's Exhibit 15 which is similar to plaintiff's product except that the housing is not parabolic in shape, yet contains all the elements necessary for blood pressure readings. This is another indication that the invention would have been obvious to those designers possessing ordinary skill in the art.

See also G. B. Lewis Company v. Gould Products, Inc., 2 Cir. 1971, 436 F.2d 1176 and Preuss v. General Electric Co., D.C., 269 F.Supp. 993, reversed 2 Cir. 1968, 392 F.2d 29.

Finally, what is claimed by the plaintiff in ornamentality of its patent is really functionability, in that the sheath contains all of the necessary elements to measure blood pressure, thereby making it easy to swing the product from side to side for reading of the scale.

Furthermore, although not binding upon this Court, it is interesting to note that the Tariff Commission's fact finding study found no violation of Section 337(a) of the Tariff Act of 1930 and further, it is not clear that the imported sphygmomanometers were made in accordance with the claim of the patent. Thereafter, on March 10, 1972, the Tariff Commission denied an application for rehearing in the matter of sphygmomanometers.

■ The Court finds that the plaintiff has failed to establish infringement of its patent in that it is not new, original and ornamental, and that the differences between the subject matter and the prior art were such that they would have been obvious to a person, having ordinary skill in the art. The patent in suit is invalid, and, therefore the defendant's defense of invalidity is granted.

The Court will not permit reasonable counsel fees in this particular case. 35 U.S.C. § 285.

The foregoing constitutes the Court's findings of fact and conclusions of law.