**UNION MANUFACTURING CO., INC.,**
**Plaintiff-Appellee,**

v.

**HAN BAEK TRADING CO., LTD.,**
**Defendant-Appellant.**

**No. 604, Docket 84-7696.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1985.
Decided April 4, 1985.

---

John M. Calimafde, New York City (Paul T. Meiklejohn, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, on the brief), for plaintiff-appellee.

John McDonald, New York City (Howard F. Cerny, New York City, on the brief), for defendant-appellant.

Before NEWMAN, PRATT, and PECK,* Circuit Judges.

* The Honorable John W. Peck of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. Since 1965, Union claims to have spent nearly $1.5 million to advertise its bottle. Much of this

JON O. NEWMAN, Circuit Judge:

Han Baek Trading Co., Ltd. ("Han Baek") appeals from a judgment entered in the District Court for the Southern District of New York (Leonard B. Sand, Judge) enjoining Han Baek from placing into commerce a vacuum bottle similar in design to one sold by appellee Union Manufacturing Co., Inc. ("Union"). The injunction was issued after a jury found in favor of Union on its claim that Han Baek had unfairly competed with Union by using a confusingly similar product design that constituted a false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982). For reasons set forth below, we vacate the judgment of the District Court and remand for further proceedings.

### BACKGROUND

Union is a Connecticut corporation that has manufactured a stainless steel vacuum bottle for nearly 20 years. The cylindrical thermos is made of stainless steel both inside and out, with one encircling ring of stainless steel near the top and a second near the bottom. The black plastic lining of a stainless steel drinking cup forms a third ring at the point where the cup is screwed onto the bottle. Virtually all Union bottles are sold with Union's registered trademark, "UNO–VAC", prominently displayed.

Han Baek imports a very similar stainless steel vacuum bottle into the United States from South Korea. Although the Han Baek bottle is taller and has a differently shaped drinking cup, there was evidence indicating that Han Baek copied the basic design of the Union bottle. Han Baek's bottle sells for significantly less than Union's bottle, in large part because Union advertises[1] and Han Baek does not. Despite price cutting, sales of Union's bottles have fallen dramatically since the 1981 introduction of the Han Baek bottle.

money was spent on co-op advertising, toward which retailers contribute a portion of the promotional expenses. Thus, the total amount Union claims has been spent to advertise its bottle is even higher.

In 1982, Union filed a complaint with the United States International Trade Commission ("ITC") alleging that Han Baek and 11 other Korean firms had violated section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337 (1982). The ITC conducted an "investigation" that included submissions by the parties, an evidentiary hearing before an administrative law judge ("ALJ"), a recommended determination by the ALJ, and oral arguments before the ITC. *See generally* 19 C.F.R. ch. II, subch. C, pt. 210 (1984) (adjudicative procedures). The purpose of the investigation was "to determine whether there is a violation of section 337 in the unauthorized importation of certain vacuum bottles and components thereof, or in their sale, by reason of the alleged (1) infringement of [Union's] common-law trademark, (2) passing off, or (3) false designation of origin (source)...." ITC opinion at 1.

The ALJ found in favor of Union, holding that Union had established a common-law trademark in the overall appearance of its vacuum bottle because the overall appearance, though not inherently distinctive, was nonfunctional and had acquired secondary meaning. The ALJ also determined that consumers were likely to confuse the Han Baek bottle and the Union bottle. The ITC issued a comprehensive opinion reversing the recommended determination of the ALJ. The ITC ruled that the design of Union's bottle had not acquired secondary meaning, that the design did not constitute a common-law trademark, and that Han Baek's similar bottle design did not constitute a false designation of origin. The ITC emphasized that Union's bottle was almost always displayed with the mark "UNO–VAC" in red and silver and that Han Baek had not copied this mark. Rather than

appealing the ITC decision to the Court of Appeals for the Federal Circuit, as permitted by 19 U.S.C. § 1337(c), Union brought this action in the District Court for the Southern District of New York.

The complaint renewed the claims Union had presented to the ITC, alleging in two causes of action that Han Baek had violated section 43(a) of the Lanham Act by infringing Union's common-law design trademark and by making a false designation of origin. Han Baek's answer included an affirmative defense of *res judicata,* based on the ruling of the ITC. The District Court never ruled on this defense.[2] The case proceeded to trial, and the jury found for Han Baek on the first cause of action claiming trademark infringement and for Union on the second cause of action claiming false designation of origin. Damages of $85,000 were awarded. The District Judge denied Han Baek's motion for judgment n.o.v., issued a permanent injunction,[3] and ordered a new trial on the issue of damages. This appeal followed.

### DISCUSSION

1. We first consider whether principles of *res judicata* should have barred Union from bringing this action in the District Court after it brought an unsuccessful action against Han Baek and others before the ITC. The fact that the ITC is an administrative body rather than a court of law does not preclude this inquiry.

Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly

---

**2.** Perhaps Han Baek did not press the issue sufficiently. Counsel for Han Baek raised the question of *res judicata* in pretrial conference and twice during an evidentiary hearing on plaintiff's request for a preliminary injunction, but nothing in the record indicates that Han Baek formally moved to dismiss on this ground.

**3.** The District Court enjoined Han Baek from using Union's bottle design or any design sub-

stantially similar thereto and from "making, using, selling or placing into commerce stainless steel vacuum bottles of the style of plaintiff's" bottle. The District Court's order further required that Han Baek deliver up for destruction all of its bottles and promotional materials. Union was awarded its costs plus $3,000 in attorney's fees as the prevailing party on the false designation of origin claim.

before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

*United States v. Utah Construction Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966) (footnotes and citations omitted); *see Delamater v. Schweiker,* 721 F.2d 50, 53–54 (2d Cir.1983) (*res judicata* effect granted to administrative adjudications but not to administrative decisions); *Wickham Contracting Co. v. Board of Education,* 715 F.2d 21, 26 (2d Cir.1983) (granting *res judicata* effect to section 8(b)(4) unfair labor practice determination of NLRB).

■■■ Nor is it apparent why the policies underlying the doctrine of *res judicata* should not require Union, having chosen to initiate an administrative adjudication, to take the exclusive avenue of appeal afforded by law—review of ITC decisions by the Court of Appeals for the Federal Circuit, 19 U.S.C. § 1337(c); 28 U.S.C. § 1295(a)(6) (1982). At least when the issues raised and the procedures available in the ITC proceeding are in all important respects the same as those in the District Court, *see Delamater v. Schweiker, supra,* 721 F.2d at 53–54, *res judicata* should bar the relitigation of the claim in federal court. To hold otherwise would undermine the legitimacy of the ITC proceeding; the party losing the administrative adjudication could simply file an identical action in a federal district court and thereby avoid the strict standard of review governing appeal of ITC determinations in the Federal Circuit.[4] Litigants should not be able to circumvent the decisional authority of the ITC and the reviewing authority of the Federal Circuit by filing in a district court what amounts to a collateral attack on the ITC determination.

Union cites no case, nor have we found one, in which a determination of the ITC not involving patent validity has been denied *res judicata* effect. What Union relies on are the legislative history of the Trade Reform Act of 1974 as it pertains to the *res judicata* effect of ITC patent validity determinations, *see* S.Rep. No. 93–1298, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7186, 7329, and decisions of federal courts and the ITC in patent validity cases, *see, e.g., W.A. Baum Co. v. Propper Manufacturing Co.,* 343 F.Supp. 1016, 1019 (E.D.N.Y. 1972); *In re Certain Synthetic Gemstones,* 208 U.S.P.Q. 282, 284 (U.S.I.T.C. 1979). But authority regarding ITC patent validity determinations has no bearing on ITC unfair trade practice and trademark determinations. Patent validity determinations of the ITC are properly not accorded *res judicata* effect because the ITC has no jurisdiction to determine patent validity except to the limited extent necessary to decide a case otherwise properly before it. *See* S.Rep. No. 93–1298, *supra,* 1974 U.S. Code Cong. & Ad.News at 7329. Indeed, Congress has granted the district courts *exclusive* original jurisdiction over patent validity cases.[5] 28 U.S.C. § 1338(a); *see Plastic Contact Lens Co. v. Gottschalk,* 484 F.2d 837, 839 (D.C.Cir.1973); *In re Von Clemm,* 229 F.2d 441, 444 (C.C.P.A.1955); *Frischer v. Bakelite Corp.,* 39 F.2d 247, 258 (C.C.P.A.1930).

■■■ The jurisdictional bar to *res judicata* treatment of ITC patent validity determinations simply does not apply to other decisions by the ITC. The ITC has full authority to decide trademark claims con-

---

4. Review of factual findings made as part of final determinations of the ITC are governed not by the usual "clearly erroneous" standard, but by the stricter "substantial evidence" standard. *SSIH Equipment S.A. v. United States International Trade Commission,* 718 F.2d 365, 371 (Fed.Cir.1983). The reviewing court is not bound, of course, by the ITC's conclusions of law. *Id.* at 372.

5. The provision in 19 U.S.C. § 1337(b)(1) for tolling of the time limits on ITC investigations pending "proceedings in a court or agency of the United States involving similar questions concerning the subject matter of such investigation" permits the parties to an ITC investigation to seek a binding determination of patent validity before the completion of an ITC investigation. *See Ashlow Ltd. v. Morgan Construction Co.,* 672 F.2d 371, 373 (4th Cir.1982).

cerning imported goods, and the jurisdiction of federal district courts over unfair trade practice and trademark cases is not exclusive. *Compare* 28 U.S.C. § 1338(a) *with id.* § 1338(b); *see* 28 U.S.C. § 1295(a)(6); *Bally/Midway Manufacturing Co. v. United States International Trade Commission,* 714 F.2d 1117, 1124 (Fed.Cir.1983).

■ For these reasons we conclude that ITC adjudications of unfair trade practice and trademark infringement causes of action are entitled to *res judicata* effect. The consequence of that conclusion, however, is not as straight-forward as might be expected when a litigant eschews an available appeal in favor of a precluded collateral attack. Three considerations bear on our disposition. First, it was not unreasonable for Union to rely on language in some of the patent validity cases cited above in concluding that a federal court would not grant *res judicata* effect to the ITC judgment.[6] Second, since at the time of that judgment there was no statutory time limit on appeals from ITC determinations, *SSIH Equipment S.A. v. United States International Trade Commission,* 673 F.2d 1387, 1390–91 (C.C.P.A.1982), Union might still be able to obtain review in the Federal Circuit unless that Court concludes either that a recently enacted statute of limitations applies to bar an appeal at this time,[7] or that an appeal is barred by laches.

Third, for reasons discussed below, the judgment of the District Court must be vacated in any event, wholly apart from the defense of *res judicata.* Under these circumstances, we will direct the District Court to stay further proceedings for thirty days to afford Union an opportunity to pursue an appeal of the ITC decision to the Federal Circuit, and, if an appeal is promptly sought, until the appeal is decided. If Union fails to seek review in the Federal Circuit within thirty days or if the Federal Circuit adjudicates the appeal on its merits, the District Court shall dismiss the complaint. If, on the other hand, the appeal, though taken within thirty days of this decision, is not adjudicated on its merits, then the District Court shall vacate the stay and retry the case. In that event, our *res judicata* ruling shall be deemed prospective only, permitting Union to litigate the merits in the District Court if the Federal Circuit declines to entertain the appeal.

2. Han Baek's fundamental point on the merits is that the charge to the jury was inadequate as a matter of law. The District Judge charged the jury on both trademark infringement and false designation of origin. The charge on the trademark infringement claim covered ten transcript pages and included detailed instructions regarding functionality, identification of source, secondary meaning,[8] distinctive-

---

6. Union might also have relied, mistakenly in our view, on one sentence in the following passage from the Senate Report on the Trade Act of 1974:

> For example, in patent-based cases, the Commission considers, for its own purposes under section 337, the status of imports with respect to the claims of U.S. patents. The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts.

S.Rep. No. 93–1298, *supra,* 1974 U.S.Code Cong. & Ad.News at 7329. We read the last sentence of this quotation as limited to patent validity cases. Read out of context, however, it might appear to have broader effect.

7. On November 11, 1984, Congress amended section 337(c) of the Tariff Act of 1930, 19 U.S.C. § 1337(c), to provide that appeals of ITC determinations must be made "within 60 days after the determination becomes final." Trademark Clarification Act of 1984, Pub.L. No. 98–620, § 413, 98 Stat. 3335, 3362.

8. The portion of the jury charge relating to secondary meaning reads as follows:

> If in the mind of the consumer, observation of that design leads to an association that that product comes from a particular source, then one can say that that design has acquired a secondary meaning and identification of that product with that source....
>
> ....
>
> Now, designs which are not fanciful or arbitrary do not obtain protection solely from their use as a trademark. Such designs must first acquire distinctiveness as a result of the owner's efforts in the marketplace. That is

ness, the second-comer doctrine, and likelihood of confusion. The charge on the false designation of origin claim covered about one transcript page, reading in its entirety:

Now, the plaintiff's other theory of recovery, and the plaintiff is entitled to advance more than one theory, relates to what is called a false designation of origin claim, which is based on a federal statute and which provides that any person who shall use a false designation of origin in connection with any goods shall be liable to any person who is or may be damaged as a result of such false representation.

To establish this claim against defendant, that is, its claim based on this theory of liability of false designation of origin, the plaintiff must prove by a preponderance of the evidence each of the following elements:

1. That the plaintiff has established the bottle design as an indication of the source or origin of the bottles.

2. That the defendant's bottle design constitutes a false representation with respect to the origin of the bottles sold by the defendant.

3. That there is a likelihood of confusion among ordinarily prudent purchasers as to whether the defendant's bottle came from the plaintiff.

Han Baek contends that this charge is incorrect as a matter of law because it fails to require that the jury find that Union's bottle has acquired secondary meaning. The District Judge declined to give an instruction requested by Han Baek, which would have explicitly required a finding of secondary meaning in the design of the Union bottle as an element of the false designation of original claim.[9] In the order denying Han Baek's motion for judgment n.o.v., Judge Sand expressed the view that the requested instruction was not needed because he had included language on "virtually the same concept" as secondary meaning when he told the jury that the bottle design must be established as an indication of the source of the product.

In considering Han Baek's contention, we note at the outset some disquiet as to the propriety of submitting to the jury separate claims for trademark infringement and false designation of origin in a case involving an unregistered mark.[10] There was a time when a section 43(a) false designation of origin claim was thought to have limited scope, see, e.g., Federal-Mogul-Bower Bearings, Inc. v. Azoff, 201 F.Supp. 788, 789 (N.D.Ohio 1962) (origin means only geographic origin), rev'd, 313 F.2d 405, 408 (6th Cir.1963), but the claim is now fre-

what is called the development of a secondary meaning. That is, a nonarbitrary or fanciful design claimed to be a trademark must have been so used that its primary significance in the minds of the consuming public is not the product itself, but the identification of the product with a single particular source.

Now, to determine whether the vacuum bottle design utilized by the plaintiff has acquired secondary meaning, you should consider the following factors: the length and manner of its use; the level of sales; the nature and extent of advertising and promotion of the design; the efforts made in the direction of promoting a conscious connection in the public's mind between the design and the particular product and a particular manufacturer; the similarity of the market or products.

The ultimate question is whether the product is distinctive and how it achieved that distinctiveness, that is, inherently or by virtue of the very nature of the design, being arbitrary or fanciful or by usage, and if you conclude that it has acquired such distinctiveness, it is immaterial whether the distinctive-

ness arises by virtue of its inherent nature or by usage.

9. The defendant's proposed charge on false designation of origin read as follows:

To establish its claim against the defendant on this theory of liability, the plaintiff must prove by a preponderance of the evidence each of the following elements:

1. That the design of the bottles is confusingly similar;

2. That the features of the design are primarily nonfunctional; and

3. That the design has acquired secondary meaning. Black & Decker v. Ever-Ready Appliance, [518] F.Supp. 607 (1981) (E.D. Miss.[Mo.]) [aff'd, 684 F.2d 546 (8th Cir. 1982)].

10. Though Union's mark "UNO–VAC" is registered, the claims in this litigation concern only the unregistered mark alleged to exist in the bottle design.

quently recognized, with regard to unregistered marks, as the equivalent of a claim for trademark infringement. *See, e.g., Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 213 (2d Cir.1985); *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir.1981); *Beech-Nut, Inc. v. Warner-Lambert Co.,* 480 F.2d 801, 803 (2d Cir.1973); *see* 1 J. McCarthy, *Trademarks and Unfair Competition* § 27:3B, at 347–50. When a mark is unregistered, we doubt that a plaintiff should be entitled to have a jury consider separate claims of trademark infringement and false designation of origin unless he can satisfy the district court that in the circumstances of his particular case a sufficient distinction between the claims exists to warrant submission of both claims.

Next, we pause to observe that care must be taken in explaining to a jury the phrase "secondary meaning" in the context of claims involving non-verbal marks. Words can have a primary meaning in their ordinary usage in the language and also a secondary meaning that connotes the source of a product. A non-verbal mark, such as a design, can achieve such widespread recognition that it too serves to identify the source of a product. Drawing a parallel with verbal marks, we say that such a design has acquired "secondary meaning" even though, unlike a verbal mark, it never had a primary meaning. *See* 1 J. McCarthy, *supra,* § 15:2E, at 665. Lawyers and judges are used to such terminology, but jurors are not. A jury asked to determine whether a design has acquired "secondary meaning" might be helped by an explanation of the phrase so that they would not wonder what happened to the design's primary meaning.

 Turning specifically to Han Baek's point that the jury was not required to find secondary meaning as an element of the false designation of origin claim, we agree that the omission was error warranting a new trial. Unlike arbitrary or suggestive verbal marks, which are eligible for protection under section 43(a) without proof of secondary meaning,[11] *see Thompson Medical Co. v. Pfizer, Inc., supra,* 753 F.2d at 216, non-verbal marks that are unregistered always require proof of secondary meaning, *Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 304 (2d Cir. 1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). We do not agree with Judge Sand that the lack of a specific instruction on secondary meaning was inconsequential in view of the instruction that the bottle design had to be established as an indication of source. Without an explanation, the jury could not be expected to appreciate the legal equivalence between a required finding of secondary meaning and a required finding that a design indicates source. Having been explicitly instructed that a finding of secondary meaning was a required element of the infringement claim, the jury could only take the omission of that instruction from the charge on false designation of origin to mean that it could uphold Union on the second cause of action on a lesser showing than that required for the first cause of action. The likelihood of the jurors' misunderstanding on this score is heightened by their two requests for "further definition" of false designation of origin. The requests were answered with language not substantially different from the original instruction.

CONCLUSION

The error in the instruction on the false designation of origin claim requires a new trial on that claim. We therefore vacate

---

**11.** Evidence of the degree to which the mark has acquired secondary meaning, may, however, be an important part of determining whether there exists a likelihood of confusion sufficient to warrant relief. *See Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 821 (9th Cir.1980) ("The stronger the evidence of secondary meaning, the stronger the mark, and the more likely is confusion."); *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *Polaroid Corp. v. Polaroid Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

the judgment of the District Court and remand for further proceedings consistent with this opinion. The District Court shall stay further proceedings to afford Union an opportunity, within thirty days, to appeal the ITC determination to the Court of Appeals for the Federal Circuit. If Union fails to seek review in the Federal Circuit within thirty days or if the appeal is entertained on its merits, the complaint in this case shall be dismissed. If the appeal is not entertained, proceedings in the District Court may be resumed. In that event, the adjudication in favor of Han Baek on the trademark infringement claim, from which Union has not sought relief, may be reinstated and a new trial held on the false designation of origin claim.