977 F.2d 571
 14 ITRD 2160, 1992-2 Trade Cases P
69,998, 24 U.S.P.Q.2d 1851
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The BALTIMORE LUGGAGE COMPANY, Plaintiff-Appellant,
v.
SAMSONITE CORPORATION, Defendant-Appellee.
The BALTIMORE LUGGAGE COMPANY, Plaintiff-Appellee,
v.
SAMSONITE CORPORATION, Defendant-Appellant.
 No. 91-2171, 91-2190.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1992
Decided: October 16, 1992
 
 1
 Appeals from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, District Judge. (CA-86-03-WN)
 
 
 2
 ARGUED: Theodore Adam Breiner, Breiner & Breiner, Alexandria, Virginia, for Appellant.
 
 
 3
 Patrick Grady Burns, Welsh & Katz, LTD., Chicago, Illinois, for Appellee.
 
 
 4
 ON BRIEF: Alfred W. Breiner, Breiner & Breiner, Alexandria, Virginia, for Appellant.
 
 
 5
 A. Sidney Katz, Welsh & Katz, LTD., Chicago, Illinois; Paul N. Sameth, Adelberg, Rudow, Dorf, Hendler & Sameth, Baltimore, Maryland, for Appellee.
 
 
 6
 D.Md.
 
 
 7
 Affirmed.
 
 
 8
 Before HALL, Circuit Judge, KISER, United States District Judge for the Western District of Virginia, sitting by designation, and BLATT, Senior United States District Judge for the District of South Carolina, sitting by designation.
 
 KISER, District Judge:
 OPINION
 
 9
 Baltimore Luggage appeals the district court's denial of attorneys' fees it sought under that provision of the Lanham Act providing for recovery of attorneys' fees to prevailing parties in"exceptional cases." 15 U.S.C. § 1117. The district court found that Baltimore's claim for attorneys' fees, as well as Baltimore's antitrust and unfair competition claims, were barred by the doctrines of collateral estoppel and res judicata, respectively, arising out of an earlier International Trade Commission ("ITC") determination by an administrative law judge ("ALJ") on the same claims.
 
 
 10
 We find that the district court correctly applied both doctrines in finding that Baltimore had an opportunity to litigate fully those matters before the ITC. We find that Baltimore's failure to litigate fully its affirmative defenses in the action Samsonite brought before the ITC, and Baltimore's failure to seek a stay of the ITC proceeding or an expedited jury trial on relevant factual matters in Baltimore's parallel proceeding then pending in the district court, does not preclude application by the district court of the doctrines of collateral estoppel and res judicata-more modernly, "issue preclusion" and "claim preclusion." Further, we find that the district court properly determined that Baltimore was not entitled to attorneys' fees on the ground of bad faith during the period subsequent to the Federal Circuit's decision, because the parties' failure to settle after the Federal Circuit's decision turned solely on Baltimore's demand for, and Samsonite's refusal to pay, attorney's fees. With the issue of attorney's fees remaining in dispute, Samsonite cannot be said to have acted in bad faith. Our review of questions of law decided by the District Court is de novo. Pierce v. Underwood, 487 U.S. 552, 559 (1987).
 
 I.
 
 11
 The facts giving rise to this appeal are not in dispute. In 1985 Baltimore introduced a new line of molded luggage called"Amelia Earhart Starfrost." In 1986, Samsonite notified Baltimore that Starfrost luggage infringed upon Samsonite's common law trademark rights and demanded that Baltimore cease the sale of the Starfrost line and pay damages therefrom after an accounting.
 
 
 12
 Baltimore initiated a three-count complaint in district court on February 13, 1986. Count I requested a declaration that Samsonite had no trademark rights in Starfrost luggage and that Baltimore was not infringing. Count II alleged antitrust violations by Samsonite, and Count III alleged unfair competition.
 
 
 13
 When Samsonite's motion to dismiss was denied by the district court, Samsonite filed an answer and included four-counter claims against Baltimore for: (1) patent infringement, (2) false designation of source or origin in violation of the Lanham Act, 15 U.S.C. § 1125(a), (3) common law trademark infringement and unfair competition, and (4) violation of the Maryland Consumer Protection Act, Com. Law Art., § 13-101 et seq., Md. Code (1983). Samsonite later amended its counter-claims to add (5) "passing off" under 15 U.S.C. § 1125(a). During the pendency of the district court action, Samsonite commenced a parallel action before the ITC on December 31, 1986 against Baltimore and seven other respondents alleging the same claims it had brought as counter claims against Baltimore in Baltimore's original action.
 
 
 14
 Baltimore raised twenty-one affirmative defenses in its response to Samsonite's ITC complaint, including (1) that Samsonite had unclean hands and (2) that Samsonite had committed antitrust violations. A hearing was held before an ALJ in September 1987. At the end of the nine-day hearing, Baltimore submitted its findings of fact, one of which proposed bad faith on the part of Samsonite for pursuing unfair competition and restraint of trade actions against Baltimore. Baltimore also presented an affirmative defense of unclean hands in its Prehearing Statement before the ITC.
 
 
 15
 The ALJ found that Samsonite had no trademark rights because its design was de jure functional, non-distinctive and had not acquired secondary meaning. The ALJ found that Samsonite failed to prove injury from Baltimore's importation and sale of luggage in the United States. The ALJ further determined that the record did not support Baltimore's affirmative defenses of bad faith or other conduct on the part of Samsonite to warrant a finding of trademark misuse, unclean hands and/or antitrust violation. Samsonite petitioned the ITC for review of the Initial Determination, which petition was declined on December 21, 1987. Samsonite then appealed the ITC judgment to the Court of Appeals for the Federal Circuit which, on October 13, 1988, affirmed the ALJ's decision on Samsonite's claims and vacated as moot that part of the ALJ's decision which denied the validity of Baltimore's affirmative defenses relating to unfair competition, holding that Baltimore's claims were not before the Federal Circuit in Samsonite's appeal. Although Baltimore was present, it did not appeal the ITC's findings adverse to it on its antitrust, unclean hands or bad faith affirmative defenses to the Federal Circuit.
 
 
 16
 Samsonite then proceeded to district court and moved for summary judgment on Baltimore's claims of antitrust and unfair competition violations, on the ground that Baltimore's claims were barred by the ALJ's decision under the doctrine of res judicata. Samsonite also moved to dismiss Baltimore's declaratory action on the ground that no actual case or controversy existed. The district court held that because the ALJ's determinations adverse to Baltimore had not come before the Federal Circuit on appeal, the Federal Circuit could not vacate as moot that part of the ALJ's decision denying the validity of Baltimore's affirmative defenses, and that therefore the ALJ's rulings on Baltimore's affirmative defenses were capable of having preclusive effect. The district court also found, pursuant to the ALJ's rulings against Samsonite, that no actual case or controversy existed between Baltimore and Samsonite and granted Samsonite's motion to dismiss Baltimore's declaratory action. However, the district court reserved the issue of whether Baltimore might recover attorneys' fees under 15 U.S.C. § 1117, that section of the Lanham Act which provides that in exceptional cases the court "may award reasonable attorney fees to the prevailing party."
 
 
 17
 Upon review of the pleadings submitted, the district court then ruled that Baltimore's Motion and Proffer of Evidence for Attorney Fees was barred under the doctrine of collateral estoppel arising out of the ALJ's finding of "no bad faith" and upon Baltimore's inadequate proffer of evidence showing bad faith or other evidence warranting an award of attorney fees. The district court also barred further hearing of Baltimore's antitrust and unfair competition counts, holding that the ITC's determinations against Baltimore on its affirmative defenses of unclean hands and antitrust were res judicata. Baltimore now appeals the district court's applications of collateral estoppel to its motion for attorney fees and res judicata to its antitrust and unfair competition claims. Samsonite cross-appeals on the ground that the district court improperly denied Samsonite's motion to dismiss Baltimore's causes of action for antitrust violation and unfair competition.
 
 II.
 
 18
 The doctrine of res judicata precludes relitigation not only of issues that were actually decided but also issues which could have been presented for determination. Watkins v. M & M Tank Lines, Inc., 694 F.2d 309, 311 (4th Cir. 1982). When an administrative agency acts in a judicial capacity and "resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," courts "have not hesitated to apply res judicata to enforce repose." United States v. Utah Construction Co., 384 U.S. 394, 42122 (1966).
 
 
 19
 In this appeal, Baltimore asserts that although it had an opportunity to litigate before the ITC, it did not have an adequate opportunity, and argues on two grounds that the district court improperly gave preclusive effect to the ITC proceeding: (1) that the ITC lacked jurisdiction to grant relief to Baltimore on its affirmative defenses of antitrust and unclean hands and consequently the ITC findings against Baltimore on those defenses were nonessential to the determinations the ITC properly made against Samsonite; and (2) that because the ITC proceeding could afford Baltimore no relief in the form of damages or attorneys' fees on Baltimore's affirmative defenses, Baltimore had no incentive to present evidence to the ITC substantiating its allegations of unfounded trademark claims by Samsonite. Baltimore acknowledges, however, that it "had no choice but to take some action in the ITC or be held in default." Baltimore Reply Brief, at 5.
 
 
 20
 The ITC has full authority to decide trademark claims and its adjudications of unfair trade practice and trademark infringement causes of action are entitled to res judicata [claim preclusion] effect. Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd., 763 F.2d 42, 45-6 (2d Cir. 1985). Claim preclusion is the extinguishment of a claim by a prior final judgment by a competent court and bars relitigating any matter offered to sustain or defeat a claim in a previous action. Nevada v. United States, 463 U.S. 110, 130 31 (1983). When the issues raised and the procedures available in the ITC proceeding "are in all important respects the same as those in the District Court, res judicata should bar the relitigation of the claim in federal court." Han Baek Trading Co., 763 F.2d at 45 (citations omitted). The doctrine of administrative res judicata has application when there is, inter alia, a hearing, testimony, subpoenaed evidence, argument and an opportunity to test any contention by confrontation. Delamater v. Schweiker, 721 F.2d 50, 54 (2d Cir. 1983). An ITC determination is conclusive in a subsequent action between the same parties when an "issue of fact or law is actually litigated and determined by a valid and final judgment." Block v. U.S. Intern. Trade Comm'n, 777 F.2d 1568, 1571 (Fed. Cir. 1985). But fairness considerations, such as whether the parties were in fact afforded "a full and fair opportunity to litigate," may also determine whether the doctrine is to be applied. Montana v. United States, 440 U.S. 147, 153-54 (1979).
 
 
 21
 The district court found that Baltimore had a full and fair opportunity to litigate its affirmative defenses of unfair competition and antitrust in the ITC proceeding. Baltimore complains that initiation of an ITC investigation deprived it of its right to a jury trial. An administrative proceeding does not deprive a party of its right to a jury trial, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979), nor does an administrative investigation carry res judicata effect. Baltimore was not precluded, during the ITC's investigation, to seek expedited proceedings in the district court where it could have asserted its seventh amendment right to a jury trial prior to the ITC determination. The district court properly found that Baltimore had ample opportunity to litigate its affirmative defenses before the ITC: Baltimore was a party, see 19 C.F.R. § 210.4, was entitled to utilize all discovery procedures provided by 19 C.F.R. § 210.30-210.37, and had the opportunity to cross-examine Samsonite's witnesses.
 
 
 22
 The district court recognized that Baltimore, not being adversely affected by the ITC's final determination, had no right to appeal the ITC decision to the Federal Circuit. Surface Technology, Inc. v. U.S. Int'l Trade Comm'n, 780 F.2d 29 (Fed. Cir. 1985); Krupp Int'l v. U.S. Int'l Trade Comm'n, 626 F.2d 844 (Fed. Cir. 1980). However, Baltimore had the right, which it exercised, to intervene in Samsonite's appeal to protect the ITC determination that Baltimore had not been in violation of § 1337. Baltimore could have raised at that time the ITC's findings adverse to it on its affirmative defenses of antitrust and unfair trade and bad faith claim. The district court concluded that Baltimore's election not to do so did not deprive Baltimore of a full and fair opportunity to litigate its affirmative defenses both before the ITC and before the Federal Circuit. To allow Baltimore to relitigate its claims would undermine the legitimacy of the rulings of the decisional authority of the ITC and the reviewing authority of the Federal Circuit. Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd., 763 F.2d at 45. We find no error in the district court's determination that relitigation of Baltimore's claims was barred under the doctrine of res judicata.
 
 III.
 
 23
 The district court also held that the ITC's finding of no bad faith collaterally estopped Baltimore from recovering attorney's fees for conduct by Samsonite which Baltimore claimed was motivated by bad faith. The doctrine of collateral estoppel operates to prevent relitigation of matters determined in a prior proceeding. Watkins v. M & M Tank Lines, Inc., 694 F.2d at 311. Collateral estoppel, or issue preclusion, obtains when (1) an issue of fact or law is actually litigated; (2) a determination is made by a valid or final judgment; (3) the determination is essential to the judgment; (4) the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Restatement (Second) of Judgment, § 27. The district court found that the ITC's determination of no bad faith was not essential to its judgment because the ITC also found that Samsonite had failed to prove its allegations and had found that many of Baltimore's affirmative defenses had been proven. Although nonessential findings ordinarily should not serve as the basis for collateral estoppel-and the district court agreed with Baltimore's argument that litigants may not concentrate their energies and resources upon the full development and presentation of non-essential issues-we discussed an overriding principal guiding the application of collateral estoppel to non-essential findings in Ritter v. Mount St. Mary's College, 814 F.2d 986, 993-94 (4th Cir. 1987), in which we stated that the duty of the court is to "protect a litigant's right to a full and fair opportunity to litigate his claims." The district court found, as we did in Ritter, that the rationale for applying collateral estoppel to an issue not essential to the judgment is satisfied when it is "obvious on the record that the appellant has had a full and fair opportunity to litigate." Ritter, 814 F.2d at 994. We find, in consequence, that the district court properly held that the ITC's findings against Baltimore on its affirmative defenses collaterally estop relitigation of the issue of bad faith in Baltimore's request for attorneys' fees.
 
 
 24
 Although the district court correctly found that Baltimore had a full and fair opportunity to litigate the issue of bad faith which provided an exception to the requirement that the finding be essential to the judgment, we disagree with the characterization that it was a nonessential finding. As it turned out, the finding of bad faith was not essential because the ALJ rendered a judgment for Baltimore based on Samsonite's failure to prove its claims. However, prior to the ALJ's judgment, the affirmative defenses raised by Baltimore were relevant. Proof of unclean hands or bad faith would have defeated Samsonite's claims. The fact that Baltimore did not, or could not, prove its affirmative defenses and the fact that the ALJ rendered his judgment on the basis of Samsonite's inability to prove its claims does not render the finding on the affirmative defenses "nonessential." Indeed, Baltimore raised the defenses and asked the ALJ to rule on them. Had the ruling been favorable to Baltimore, we dare say that Baltimore would not now be characterizing the finding as being non-essential.
 
 
 25
 Baltimore argues that even if collateral estoppel applies, a finding of bad faith is not essential to an award of attorneys' fees under 15 U.S.C. § 1117 because this action constitutes the "exceptional case" warranting compensation to a defendant against whom an unfounded suit has been brought for purpose of harassment and the like. Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 526 (D.C. Cir. 1985). Baltimore points to our recent ruling in Scotch Whiskey Ass'n v. Watson, No. 91-2348, No. 91-2359, No. 91-2360, 1992 U.S. App. LEXIS 3503, in which we agree with Noxell that the standard upon which an award of attorneys' fees to a prevailing plaintiff under § 35(a) of the Lanham Act is different from the standard governing a fee application by a prevailing defendant. In Scotch Whiskey we held that demonstration of bad faith in the acts of a plaintiff is not necessary under the "exceptional case" standard we apply in awarding attorneys' fees to a prevailing defendant. Our rationale is similar to that of Noxell which justified an award of attorneys' fees to a prevailing defendant where the plaintiff's improperly selected venue imposed an unreasonable hardship upon the defendant. Noxell, 771 F.2d at 525. However, the "exceptional case" standard applied in both Noxell and Scotch Whiskey to awards of attorneys' fees does not apply here. Baltimore initiated this action and thereby obtains the status of a prevailing plaintiff. We stated in Scotch Whiskey that for a prevailing plaintiff to succeed in a request for attorneys' fees, "she must show that the defendant acted in bad faith." Because the District Court found that the doctrine of collateral estoppel applied to the ITC finding that Baltimore had not proved bad faith, it properly barred Baltimore from relitigating the issue of bad faith in its claim for attorneys' fees.
 
 IV.
 
 26
 Samsonite cross-appeals, seeking reversal of the district court's order entered Feb. 24, 1987 denying Samsonite's motion to dismiss Baltimore's second and third causes of action for antitrust and unfair competition violations for failure to state a claim. Pleadings are governed by Fed.R.Civ.P. 8 which requires a short and plain statement of a claim giving the defendant fair notice of the claim and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957).
 
 
 27
 On a motion to dismiss, the trial court must presume all factual allegations are true and all reasonable inferences must be made in favor of the non-moving party. In Caddell v. Singer, 652 F.2d 393, 394 (4th Cir. 1981), we stated that the accepted rule is that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Samsonite asserts that dismissal was appropriate because Baltimore's pleadings failed to allege necessary elements such as interstate commerce, a specific intent to monopolize, a dangerous probability of success, or injury in a relevant market. Baltimore alleged, in its second count for antitrust violation, that Samsonite attempted to monopolize the molded luggage market based upon unlawful extension of its expired United States patents, thereby causing Baltimore irreparable injury to its business and property in "violation of the Antitrust Laws of the United States." Complaint, pp 23-27. In its third count of unfair competition, Baltimore alleged that Samsonite, by attempting to enforce an invalid trademark right, sought to monopolize the molded luggage market and force Baltimore out of the molded luggage market, causing irreparable harm and damage to Baltimore. Complaint, pp 28-30.
 
 
 28
 Both parties rely on Kellogg Co. v. National Biscuit Co., 71 F.2d 662 (2d Cir. 1934), Samsonite arguing that the pleadings in Kellogg raised sufficient allegations of product disparagement, threats of boycott, threats to plaintiff's customers and threats of unjustifiable litigation to withstand a motion to dismiss, and Baltimore arguing that the facts in Kellogg describe precisely "on all fours" its causes of action for antitrust and unfair competition. Rule 8 was promulgated in 1937, 2A Moore's Federal Practice p 8.01 (2d ed. 1985), and the standard governing pleadings adequate to withstand a motion to dismiss in 1934, when Kellogg was decided, do not govern here.
 
 
 29
 Samsonite also relies on Car-Freshener Corp. v. Auto Aid Mfg. Corp., 438 F. Supp. 82 (N.D.N.Y. 1977), in which the court dismissed an antitrust violation claim alleging that a party's registration and attempted enforcement of a trademark right to pine-tree shaped air fresheners created a dangerous probability of gaining monopoly power in the market for auto air fresheners. Car-Freshner is inapposite; Baltimore's pleadings do not raise the claim of gaining monopoly power, but rather, aver that Samsonite was unlawfully and in bad faith seeking to continue a monopoly by wrongfully asserting its exclusive rights to an expired patent. Claim, pp 31-33.
 
 
 30
 Finally, Samsonite points out that numerous cases hold that in order to state a cause of action under § 2 of the Sherman Act, one must not only allege that the charged party has attempted to monopolize a certain market, but also that the charged party "holds such a power in the market that there is a 'dangerous probability' that the attempt will succeed." Pennwalt Corp. v. Zenith Laboratories, Inc., 472 F. Supp. 413, 423 (E.D. Mich. 1979) (citations omitted). Although Baltimore's claim fails to allege Samsonite's market power, it alleges a probability of monopoly power capable of forcing Baltimore out of the molded luggage market. At so early a stage in the case, the district court reasonably could have found that Baltimore's pleadings adequately stated a claim upon which relief could be granted subject to discovery to determine the extent of Samsonite's market power.
 
 
 31
 Because we have found no reversible error, the judgment of the district court is hereby
 
 
 32
 AFFIRMED.
 
 HALL, Circuit Judge, dissenting:
 
 33
 I disagree that the ITC's findings preclude Baltimore Luggage's claims of antitrust and unfair competition and its motion for attorneys' fees. Accordingly, I dissent.
 
 
 34
 The majority holds that res judicata bars relitigation of the antitrust and unfair competition claims, and collateral estoppel bars relitigation of the bad faith issue because Baltimore Luggage had a full and fair opportunity to litigate these issues in the ITC. However, a full and fair opportunity to litigate is not the sole consideration in applying administrative res judicata. The court must also consider whether the findings of the ITC were essential to its judgment." Non-essential findings should not serve as the basis for collateral estoppel because the litigants might not have concentrated their energies and resources upon the full development and presentation of these issues." Ritter v. Mount St. Mary's College, 814 F.2d 986, 994 (4th Cir. 1987).
 
 
 35
 The ITC's authority to grant relief is limited: it may enter exclusion orders precluding importation of goods into the United States, 19 U.S.C. §§ 1337(d),(e), and cease and desist orders prohibiting unfair acts, 19 U.S.C. § 1337(f). Although Baltimore Luggage understandably raised all affirmative defenses, it did not realistically have a full and fair opportunity to litigate them because the ITC cannot grant injunctive relief, damages, or attorneys' fees on the basis of affirmative defenses. Moreover, Baltimore Luggage could not pursue these defenses as counterclaims because respondents may not file counterclaims in ITC proceedings. In addition, ITC proceedings use an accelerated timetable, which disadvantages respondents who do not have the luxury of choosing the forum.* In any event, the ALJ's findings on Baltimore Luggage's defenses were wholly unnecessary to its judgment against Samsonite. Therefore, neither res judicata nor collateral estoppel should bar Baltimore Luggage from pursuing its claims in the district court.
 
 
 36
 In addition, the ITC's findings that there was no bad faith on Samsonite's part should not preclude Baltimore Luggage's motion for attorneys' fees because a finding of bad faith is not required to award attorneys' fees in this case. Our recent case Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594 (4th Cir. 1992), makes clear that "a finding of bad faith on the part of a plaintiff is not necessary for a prevailing defendant to prove an 'exceptional' case under section 35(a) of the Lanham Act." Id. at 599.
 
 
 37
 The majority holds, however, that the "exceptional case" standard does not apply in this case because "Baltimore initiated this action and thereby obtains the status of a prevailing plaintiff." Slip op. 11.
 
 
 38
 Therefore, as prevailing plaintiff, Baltimore Luggage must show that the defendant acted in bad faith to win an award of attorneys' fees. I believe the majority reads Scotch Whisky too narrowly. A careful reading of Scotch Whisky makes clear that a party's label as plaintiff or defendant is not determinative of the standard that must be met to win attorneys' fees. Such labels are merely a consequence of who wins the race to the courthouse. More important is the purpose for awarding attorneys' fees: protection against unfounded claims of infringement by trademark owners. Id. at 600 (quoting S. Rep. No. 1400, 93rd Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7136).
 
 
 39
 Although Baltimore Luggage was the plaintiff in the declaratory judgment action, it brought the action to protect itself against what it considered to be unfounded allegations of infringement by Samsonite, the patent/trademark owner. Indeed, Samsonite subsequently filed the unsuccessful ITC action in an effort to enforce its unfounded claims. Therefore, under the rationale of Scotch Whisky, Baltimore Luggage should not have to show bad faith to be entitled to attorneys' fees, and the finding of the ITC is irrelevant and should be without preclusive effect.
 
 
 
 *
 In Union Mfg. Co. v. Han Baek Trading Co., 763 F.2d 42 (2d Cir. 1985), relied on by the majority, Union Manufacturing Company was the plaintiff in the ITC and had chosen the forum. Union Manufacturing clearly had a full and fair opportunity to litigate its claims, and the court properly found that preclusive effect should be given