**LOBO ENTERPRISES, INC., trading as Tunnel Bar a/k/a the Tunnel, Plaintiff,**

v.

**THE TUNNEL, INC., Defendant.**

No. 86 Civ. 9754 (KTD).

United States District Court, S.D. New York.

Jan. 14, 1987.

---

Gottlieb Rackman & Reisman, New York City, for plaintiff; (Jane Shay Wald, of counsel).

Nims, Howes, Collison & Isher, New York City, for defendant; (Oliver P. Howes, Jr., Margaret Ranft, Kevin Parks, of counsel).

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Should the determination of who may use the name "The Tunnel" for a bar in New York City be a matter determined by the federal courts?

Plaintiff herein owns an 18' × 70' storefront bar on 1st Avenue and 7th Street in the East Village, New York City, which caters primarily to male homosexuals interested in "[a] lot of leather, & the humpy guys behind the bar...." Plaintiff's Exhibit 19, at 43. On the steel shutters covering the bar's street window, plaintiff affixed the words "The Tunnel" along with a fanciful mark of a crossed spade and pickax enclosed within an exterior gear wheel. The plaintiff, although in operation since 1984, did not file a Certificate of Conducting Business under an Assumed Name for The Tunnel and apparently does all of its business under its corporate name Lobo Enterprises, Inc. There is no listing in the New York Telephone White Pages or Yellow Pages for plaintiff's establishment under either the name The Tunnel or Tunnel Bar. Plaintiff has not filed "The Tunnel" mark for federal trademark registration.

Section 130 of the New York General Business Law prohibits any person, natural or corporate, from doing business under an assumed or fictitious name unless an appropriate certificate, setting forth the name under which such business is conducted, has been filed. N.Y. General Business Law § 130(1) (McKinney 1968 & 1987 Supp.). Violation of this section is a misdemeanor and also precludes the violator from bringing any action, based on business transacted under the assumed name, in the courts of the State of New York at least until such time as the requisite certificate is filed. *Id.* at § 130(9). The defendant has already been incorporated within the State of New York to carry on a restaurant, nightclub and bar business under the name "The Tunnel" and has filed the requisite Certificate of Conducting Business Under an Assumed Name. Defendant's filing precludes the plaintiff from filing such a certificate in the State of New York using the name "The Tunnel", and from bringing any action, based on plaintiff's business as The Tunnel, in the courts of the State of New York.

Plaintiff seeks a finding from this court that its prior use of the service mark "The Tunnel" precludes the defendant from the operation of its business under that designation. Plaintiff also seeks a preliminary injunction prohibiting the defendant from using the name "The Tunnel"; in effect, requiring the defendant to file for a corporate change of name. Plaintiff brings this cause of action on both federal and New York State trademark law grounds.

### 1. *Jurisdiction of the Federal District Court*

Generally the Lanham Act deals with the federal registration and protection of federally registered trademarks.

The intent of this [act] is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127 (1982). Section 43 of the Lanham Act, however, covers counterfeit trademarks or false designation of origin, false description or representation of goods or services in commerce. Plaintiff claims that this case is covered by that section. More specifically, plaintiff's federal cause of action is grounded on section 43(a) of the Lanham Act, which provides in relevant part as follows:

Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be ... used in commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1982). This section of the Lanham Act has been construed to protect both registered trademarks, *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 64 n. 1 (2d Cir.1985), and unregistered marks, such as the one involved in this case. *Union Manufacturing Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 47–48 (2d Cir.1985); *Arrow United Industries, Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 413 n. 5 (2d Cir. 1982); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 77–78 (2d Cir.1981); *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1129–30 (2d Cir.1979); *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 646 (6th Cir.1982); *G's Bottoms Up Social Club v. F.P.M. Industries*, 574 F.Supp. 1490, 1495 (S.D.N.Y.1983).

With the exception of *G's Bottoms Up*, these cases deal with a trademark or a service mark attached to or appurtenant to an object which actually moves in commerce or to a service performed by a party in various states. Clearly, cases construing section 43(a) derive a federal interest in regulating unregistered trademarks that affect interstate commerce from the commerce clause of the United States Constitu-

tion. U.S. Const. art. I, § 8, cl. 3. Although the plaintiff here tries mightily to show that interstate commerce is involved in this case, the facts belie such a holding. For instance, the trademark and service mark search in March, 1986 that the defendant undertook in choosing its service mark shows a bar and restaurant called The Tunnel in Union City, New Jersey. There is no suggestion by plaintiff that the Union City, New Jersey establishment be required either to shut its doors or change its name although the Union City Tunnel is no more than ten miles away from plaintiff's establishment.

■ Plaintiff, however, maintains that the use of the word "Tunnel" as a service mark in New York City is something which does affect interstate commerce. Specifically, plaintiff points to the fact that it advertises in various gay publications including the *Advocate*, Plaintiff's Exh. 11, at 40, *GaYellow Pages*, Plaintiff's Exh. 19, at 43, *Michael's Thing*, Plaintiff's Exh. 11, at 24, *Bob Damron's Address Book*, Plaintiff's Exh. 18, at 273, *Night and Day*, Plaintiff's Exh. 12, at 62, and *Chorus Lines*, Plaintiff's Exh. 26, at 39. All of this advertising is supposedly done intending to attract male homosexual tourists to come to plaintiff's lower East Side pub. It is interesting to note that all of the advertising and sought-for publicity of plaintiff's establishment is limited to the gay media. Indeed, it would seem that the clientele which plaintiff seeks to attract are male homosexuals interested in "lots of leather" who either live in Manhattan or happen to be there.[1] There is no suggestion nor, indeed, could there be one, that the plaintiff's bar and establishment in and of itself is a drawing card to bring tourists to visit Manhattan. The fact that tourists who are already in Manhattan may attend the es-

---

1. The harm plaintiff asserts it will suffer is that tourists and bar-hoppers already in Manhattan will take a cab to the "Tunnel", and may be misled to defendant's, rather than plaintiff's, establishment. Transcript of hearing, December 24, 1986, before Judge Leisure, at 5–6. On the other hand, a witness for defendant testified that the mailing lists used to send invitations to defendant's establishment were edited at the printers to include only Manhattan addresses, unless a specific event was aimed at a place or occurrence in another borough. In any case, any alleged affect on commerce is restricted to, at most, the five boroughs of New York City.

tablishment does not affect interstate commerce, but is rather merely incidental thereto.

■ It would appear to me, particularly in the circumstances of this case, that jurisdiction does not properly lie with this court since there is no true federal interest to be vindicated in connection with this dispute. I am particularly sensitive to the requirements of federal jurisdiction, because to rule otherwise in this case would bring the federal courts into an area totally unforeseen by our founding fathers. The choice of corporate name or "conducting business as" name is one properly left to state jurisdiction. There has been, over the years, a clamor from certain segments of society to have the federal government take over all corporate law, but enough has already been written about that to show that, as of now, such a takeover would be totally inappropriate if not totally impermissible. In this case, in order to exercise jurisdiction, this court would have to condone plaintiff's state law misdemeanor. In addition, plaintiff would have this court deal with state corporate law so as to force defendant's change of name and allow plaintiff to file the requisite Certificate of Conducting Business Under an Assumed Name, and thus cover up the criminal violation already extant.

For the reasons I have stated, it appears to me that this court is without jurisdiction in this action. Normally I would dismiss the matter; plaintiff, however, contends that, while perhaps not bound by the decision of Judge Conner in *G's Bottoms Up*, this court should find it most persuasive and should retain jurisdiction. In *G's Bottoms Up*, Judge Conner was faced with a factual situation quite different from this case. In *G's Bottoms Up*, the operators of one Manhattan gay bar sued the entity which had acquired the trademark and opened a gay bar under the trademark name seven blocks away from the first. (It is interesting to note that the purchaser of the service mark involved in that case, "The Candle", is the general manager of The Tunnel gay bar, and plaintiff's principal witness in this case). At no time was the jurisdiction of the federal court called into question in *G's Bottoms Up*. Rather, Judge Conner determined the right to use a disputed trademark which had been purchased, transferred, or appropriated by prior business use. He determined that "The Candle" mark had been properly transferred, and that a likelihood of confusion existed between the two establishments because they were essentially the same kind of business, operating in the same market, and in the same geographical area.

Insofar as pertinent to the instant question, Judge Conner's decision stands merely for the proposition that section 43(a) can cover unregistered as well as registered trademarks and service marks. That fact, however is of minimal precedential value regarding the jurisdictional question clearly raised in this case.

Federal jurisdiction of section 43(a) claims has been granted in basically three categories of cases: (1) when the trademark at issue is registered, *Scott*, 764 F.2d at 64 n. 1; (2) when trademarked goods are tangible objects that actually travel in interstate commerce, *Union*, 763 F.2d at 47–48, *Arrow*, 678 F.2d at 413 n. 5, *Warner Bros.*, 658 F.2d at 77–78, *McGregor*, 599 F.2d at 1129–30; and (3) when a trademarked service is one offered to be performed in various states, *Frisch's Restaurants*, 670 F.2d at 646. The facts of this case, however, concern a trademarked service offered to be performed in only one state, and thus raise very different issues regarding federal jurisdiction.

I am aware that there are those, including the parties to this matter, who will find a conflict between *G's Bottoms Up* and my determination as to jurisdiction in this matter, and I expect there will be an immediate appeal to the Second Circuit. Under these circumstances and because all of the facts are presently before me, I will proceed as if jurisdiction were appropriate in this court and determine whether a preliminary injunction should issue under the facts of this case.

2. *Preliminary Injunction*

"[T]he standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975). In order to succeed on a motion for a preliminary injunction, the well-settled law of this Circuit requires that the plaintiff establish:

 (a) irreparable harm; and

 (b) either

 (i) probable success on the merits, or

 (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief.

*Kaplan v. Board of Educ.*, 759 F.2d 256, 259 (2d Cir.1985); *Scott*, 764 F.2d at 66; *Procter & Gamble Co. v. Chesebrough Pond's, Inc.*, 747 F.2d 114, 118 (2d Cir. 1984); *Arrow*, 678 F.2d at 413–14.

 Plaintiff must establish that without immediate injunctive relief it will be irreparably harmed, that is, its resultant harm will not be compensable by money damages. In a trademark case, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Plaintiff here has made very little showing of harm at all, and virtually no showing of irreparable injury. It suggests that some tourists from out-of-town may be misled to defendant's Tunnel establishment, rather than plaintiff's Tunnel Bar, by citizens confused as to the identity of "The Tunnel." Plaintiff's primary witness' testimony, however, belies this harm, by describing plaintiff's Tunnel as a warm, intimate club-like bar, where patrons would go on a regular basis to socialize, and not one largely dependent upon tourism for business. Indeed, plain-

tiff's word-of-mouth reputation and advertising focused on a particular sub-division of the gay male population in Manhattan indicate that any possible harm would be neither significant nor irreparable because there was no showing that this group would be interested in the defendant's generally heterosexual disco nightclub. Plaintiff makes no showing "that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused," as to plaintiff's or defendant's establishments. Because plaintiff and defendant seek to service such very different markets, the likelihood of customer confusion is very small and would not constitute irreparable injury. Moreover, plaintiff makes no showing that such confusion, if it exists at all, would not be compensable by money damages. Alternatively, plaintiff suggests that publicity about defendant's Tunnel may suggest to potential customers that plaintiff's Tunnel is simply "riding the coattails" of defendant's larger, fancier establishment, and thereby injure plaintiff's reputation. Again, plaintiff has neither made a showing that association of defendant's establishment with its own, would tarnish its reputation, nor that such harm, if it exists, would mislead an appreciable number of reasonably prudent purchasers. Thus, I find that plaintiff has not established an irreparable injury requiring immediate injunctive relief.

Plaintiff must also establish probable success on the merits or serious questions going to the merits and a balance of hardships in its favor, in order to obtain a preliminary injunction.

 In a section 43(a) case, plaintiff must establish probable success, or serious questions going to the merits, of each of the following elements:

1. That plaintiff has established its mark as an indication of the source or origin of its establishment or service;

2. That defendant's mark constitutes a false representation with respect to the origin of its establishment or service; and

3. That there is a likelihood of confusion among ordinarily prudent customers as to the origins of plaintiff's and defendant's establishments. *Union*, 763 F.2d at 47. "The crucial issue in these cases is 'whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods [or services] in question.'" *McGregor*, 599 F.2d at 1130, *quoted in Scott*, 764 F.2d at 66.

While plaintiff has presented evidence that it uses "The Tunnel" mark to indicate the origin of its establishment in advertising and on t-shirts, it has presented evidence that its mark is an indication of its establishment only in the gay male population "interested in lots of leather" residing in Manhattan. The service being offered by plaintiff is a warm, intimate, club-like bar where members of the subdivision of the population to whom its advertising is directed would feel comfortable and among others with similar interests. Regarding element two, it is apparent that the two marks themselves used to identify the two establishments are similar. In assessing the likelihood of confusion in element three, courts generally consider the following factors:

(a) the strength of the mark at issue;

(b) the relatedness or proximity of the services;

(c) the similarity of the marks;

(d) the likelihood that plaintiff will "bridge the gap", that is, enter the nightclub business under "The Tunnel" mark;

(e) any evidence of actual confusion;

(f) the marketing channels used;

(g) the likely degree of purchaser care;

(h) defendant's intent in selecting the mark;

(i) the quality of defendant's product; and

(j) the sophistication of the customers.

*McGregor*, 599 F.2d at 1130; *Frisch's Restaurants*, 670 F.2d at 648; *G's Bottoms Up*, 574 F.Supp. at 1496. The facts of this case do not suggest a likelihood of confusion.

 The strength of an unregistered trademark relates directly to its circulation in a general market. Circulation in a highly restricted market indicates a weak mark, while recognition in a broad market indicates a strong mark. Because plaintiff's "Tunnel" mark circulates and is recognized in the highly restricted market of the Manhattan gay male population "interested in leather", it is a very weak mark. None of the advertising or publicity efforts that plaintiff makes are geared to appeal to anyone outside that very specific market. The fact that plaintiff has no New York Telephone listing restricts knowledge of the service mark to a small inner circle of *cognoscenti* and further dilutes the strength of the mark. This circulation is insufficient to lend validity to the strength of the mark in the general public, and alone indicates that the likelihood of success here is low.

 The location of plaintiff's and defendant's services is not close. Plaintiff's establishment is a small bar capable of seating about 40 people, and employing a total of 9 employees. It does not require a cover charge from its patrons, and offers moderately-priced drinks, music selected by a disc-jockey, movies and television entertainment. It is neither equipped with a dance floor, nor licensed as an establishment for dancing, but is rather an intimate gay "leather" bar. Defendant's establishment, on the other hand, is a large nightclub that can accomodate 2,500 people and employs 50 persons. It contains three bars and a large dance floor, and specifically promotes dancing to either live music or a disc-jockey on the premises. It charges its patrons a cover charge and relatively high drink prices. It is geared specifically to the high-profit, high-fashion, celebrity-oriented nightlife. While both establishments host parties featuring special themes or activities, plaintiff's service is geared exclusively toward a gay male clientele, while defendant seeks a broader-based following. The two establishments are so different

that there seems little likelihood of success in proving confusion.

The marketing channels used by plaintiff and defendant are also very different, and as such, are unlikely to cause confusion. Plaintiff seeks the patronage of "leather" gays through such exclusively gay publications as the *Advocate, Day and Night, GaYellow Pages, Michael's Thing,* and *Chorus Lines.* While there has been no expert testimony on the matter, I am led to believe that gays interested in "leather" do not comprise the entire gay male community, but rather are a distinct subgroup thereof. On the other hand, defendant seeks publicity in such mainstream media as local television news coverage, the *New York Times, Vogue,* and *Interview.* The patronage it seeks is that of celebrities; fashion models and designers; affluent and famous people involved in film, theatre, dance, and art; upscale, fashionable, and goodlooking couples; uptown preppies; "Eurotrash" (a demeaning term for a young, affluent, desirable crowd); downtown artists; *glitterati;* and all the general public that accompanies them. Thus, defendant seeks to attract a very general public, while plaintiff seeks a very limited public.

Plaintiff argues that defendant invites gays to its Sunday "gay night" parties. Even assuming the defendant restricts its Sunday night patronage to gays, a fact which has not been proven, that does not make the universe to which the parties seek to appeal coextensive.[2]

Defendant exercised good faith in selecting the mark. It conducted a general and tradename search before selecting the name of its establishment. It registered that name as required under state law. New York General Business Law § 130(1) (McKinney's 1968 & 1987 Supp.). Moreover, defendant claims to have selected its name, as related to the building and struc-

ture it leased, and without any knowledge of plaintiff's establishment.

Thus, plaintiff has shown neither a likelihood of success on the merits, nor sufficiently serious questions going to the merits to make them a fair ground for litigation.

 Finally, the balance of hardships does not tip in plaintiff's favor. Because defendant is just establishing its business in a field dependent on publicity, and because it seeks a broad based appeal to the general public, the hardship inflicted by a preliminary injunction weighs against granting that relief.

In sum, because plaintiff has failed to establish either jurisdiction or the grounds necessary for injunctive relief, its motion for a preliminary injunction is denied.

SO ORDERED.

---

**2.** Plaintiff submitted to the court an invitation to a Sunday soiree at defendant's establishment which, it argues, is designed to attract gay men. Plaintiff's attorney fails to recognize, however,

that her client's establishment does not cater to *all* gay men, but to a distinct subset of the gay population interested in "leather."