**LOBO ENTERPRISES, INC., trading as Tunnel Bar a/k/a the Tunnel, Plaintiff-Appellant,**

v.

**The TUNNEL, INC., Defendant-Appellee.**

**No. 1109, Docket 87–7084.**

United States Court of Appeals, Second Circuit.

Argued May 8, 1987.

Decided July 2, 1987.

Jane Shay Wald, New York City (Barry A. Cooper, Amy G. Bochner, Gottlieb, Rackman & Reisman, New York City, on the brief), for plaintiff-appellant.

Oliver P. Howes, New York City (Kevin Parks, Margaret Ranft, Nims, Howes, Collison & Isner, New York City, on the brief), for defendant-appellee.

Before OAKES, NEWMAN, and PIERCE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the scope of federal jurisdiction under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), and whether the owner of a small lower Manhattan bar operating under the name "Tunnel Bar" is entitled to a preliminary injunction enjoining a new large Manhattan nightclub/disco from using the name "Tunnel". Lobo Enterprises, Inc. ("Lobo"), owner of "Tunnel Bar", appeals from a judgment of the District Court for the Southern District of New York (Kevin T. Duffy, Judge) denying its request for a preliminary injunction because of lack of subject matter jurisdiction and in the alternative for failure to establish any of the requirements for issuance of a preliminary injunction. 652 F.Supp. 1037. Because the District Court erred by taking an overly narrow view of federal court jurisdiction under the Lanham Act and because it significantly based its denial of the preliminary injunction upon an unsupported finding that Lobo's "Tunnel Bar" seeks to serve only a distinct subgroup of the gay community, we vacate denial of the preliminary injunction and remand for further proceedings.

Background

Plaintiff-appellant Lobo Enterprises, Inc. is a New York corporation. In 1984, it bought a building at 1st Avenue and 7th Street in the East Village area of New York City for the primary purpose of acquiring the ground floor bar. In August

1984, Lobo opened "Tunnel Bar", a small (18 by 70 feet), intimate (capacity of 125 people) neighborhood bar catering primarily to gay men. There is no cover charge. "Tunnel Bar" features taped music though it does not have a dance floor. Its distinctive logo, a crossed spade and pick-axe enclosed within a gear wheel, is displayed on its exterior. Over the past three years, "Tunnel Bar" has advertised in various gay publications that circulate in the New York/New Jersey metropolitan area. Some of its advertisements have appeared in publications with national distributions. The name "Tunnel Bar", however, was never listed in the New York Telephone NYNEX White Pages nor did Lobo file a Certificate of Conducting Business under an Assumed Name as required by N.Y.Gen. Bus.L. § 130(1) (McKinney 1987 Supp.) until after the filing of this lawsuit.

In October 1984, defendant-appellee The Tunnel, Inc. was incorporated in New York for the primary purpose of operating a restaurant, cafe, and cabaret business. It leased an unused train tunnel at 12th Avenue and 27th Street in New York City and in the spring of 1986 began renovations costing $3 million. A trademark search indicated that their proposed name, "Tunnel", was available. "Tunnel" occupies a 740–foot long cavernous space, can accommodate in excess of 2,000 people, and features a 2,000 square foot dance floor and state-of-the-art sound and lighting equipment; the club also has a smaller basement area with a capacity of 400 people. "Tunnel" employs 120–150 people, features live music and disc jockeys, and caters to a diverse clientele. Admission to the club is by invitation or payment of a substantial admission fee (as much as $20 on Fridays and Saturdays).

The Tunnel, Inc. entered into a contract with Steven Cohn to organize and promote its Sunday night functions. Undisputed testimony at the hearing on the preliminary injunction and documentary evidence showed that Steven Cohn is a prominent promoter of gay events, that Sunday night is commonly known as a "gay night" at major discotheques in New York City, and that one Sunday night function at "Tunnel"

organized by Steven Cohn was advertised in a publication of the Islanders' Club, a travel club serving the gay community.

On December 22, 1986, promptly after learning of defendant's use of the name "Tunnel" for its nightclub, Lobo filed an action in the District Court for the Southern District of New York to enjoin use of the name. Lobo alleged that defendant's use of the name "Tunnel" infringed Lobo's unregistered trademark in the name "Tunnel Bar" in violation of section 43(a) of the Lanham Act. Lobo further alleged that defendant's activities violated New York's antidilution law, N.Y.Gen.Bus.L. § 368–d (McKinney 1984). On December 24, 1986, District Judge Peter K. Leisure issued a temporary restraining order (TRO) enjoining defendant from operating, promoting, or advertising its nightclub under the name "Tunnel". On January 5 and 6, 1987, while the TRO was in place, District Judge Kevin T. Duffy, to whom the case was assigned, held two days of hearings on Lobo's request for a preliminary injunction. On January 14, Judge Duffy denied issuance of a preliminary injunction.

### Discussion

1. Jurisdiction

The initial question on this appeal is whether Judge Duffy erred in holding that subject matter jurisdiction was lacking because the parties were not engaged in interstate commerce. Judge Duffy concluded that the record before him did not indicate that "Tunnel Bar" is "in and of itself ... a drawing card to bring tourists to visit [New York State]. The fact that tourists who are already in Manhattan may attend the establishment does not affect interstate commerce, but is rather merely incidental thereto." 652 F.Supp. at 1040–41.

It is well established that Lanham Act jurisdiction extends to the limit of Congress's power to regulate interstate commerce. Section 45 of the Act defines "commerce" to include "all commerce which

may lawfully be regulated by Congress." *See Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 993 (9th Cir.1982); *Arrow United Industries v. Hugh Richards, Inc.*, 678 F.2d 410, 413 n. 5 (2d Cir.1982). This requirement is satisfied where a plaintiff's service mark has been advertised significantly in travel guides or other publications having interstate circulation. *See e.g., B & B St. James Pub, Inc. v. Hod O'Brien Restaurant Corp.*, 189 U.S.P.Q. 732, 733 (S.D.N.Y. 1975); *John R. Thompson Co. v. Holloway*, 141 U.S.P.Q. 355 (N.D. Tex. 1964). In the present case, the record establishes that Lobo has advertised "Tunnel Bar" extensively in travel guides and magazines having interstate circulation. Therefore, the District Court erred in ruling that Lobo failed to invoke federal jurisdiction.

2. Preliminary Injunction

In order to succeed on a motion for a preliminary injunction, the plaintiff must establish:

    (a) irreparable harm; and

    (b) either

        (1) probable success on the merits, or

        (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief.

*Kaplan v. Board of Education*, 759 F.2d 256, 259 (2d Cir.1985). We must affirm denial of a preliminary injunction unless we find, in light of applicable legal standards, that Judge Duffy exceeded his discretion. *See Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 973–74 (2d Cir.1987).

■ In a trademark case, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). In making this determination, courts look to a range of indicia of likelihood of confusion, including the strength of the mark at issue, the relatedness and proximity of the services, marketing channels used, actual confusion, likely degree of purchaser care, the sophistication of the customers, and the defendant's good faith in selecting the mark. *See Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 966–67 (2d Cir.1981) (collecting cases); *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126 (2d Cir.1979); *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). In a case such as this where the plaintiff moved for injunctive relief before the allegedly infringing trademark had been widely disseminated, it is particularly difficult to make any showing of actual confusion. Yet the threat of irreparable injury can be great, especially where the new mark is introduced with great fanfare. *Cf. Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1003–04 (2d Cir.1983) (discussing reverse confusion). The first function at "Tunnel", held on December 15, 1986, generated considerable publicity.

■ The primary reason given by the District Court for its holding that Lobo failed to establish irreparable injury—or for that matter, probable success on the merits, or even sufficiently serious questions going to the merits—was that Lobo's "Tunnel Bar" "seek[s] to service [a] very different market[ ]" than defendant's "Tunnel". 652 F. Supp. at 1042. This conclusion rests heavily, perhaps exclusively, on Judge Duffy's factual finding that Lobo's target clientele is "the highly restricted market of the Manhattan gay male population 'interested in leather.'"[1] *Id.* at 1043;

---

**1.** The record contains no attempt at a precise definition of "leather" as applied to a segment of the gay community. Evidently derived from the wearing of leather attire, the term seems to have been used by some to convey an image of roughness.

*see id.* at 1040 ("it would seem that the clientele which plaintiff seeks to attract are male homosexuals interested in 'lots of leather' "); *id.* at 1044 ("While there has been no expert testimony on the matter, I am led to believe that gays interested in 'leather' do not comprise the entire gay male community, but rather are a distinct subgroup thereof."); *id.* at 1044 n. 2 ("Tunnel Bar" "does not cater to *all* gay men, but to a distinct subset of the gay population interested in 'leather.'" (emphasis in original)).

A review of the documentary evidence before the District Court and the testimony at the TRO and preliminary injunction hearings, however, convinces us that such a narrow delineation of Lobo's target market was unwarranted on the present record. The sole reference to "Tunnel Bar" as serving a "leather" audience is a short blurb in the *GaYellow Pages* that reads: "Neighborhood bar in the East Village. A lot of leather, & the humpy guys behind the bar are big John, Frank & Russ. Try it!" *GaYellow Pages: New York/New Jersey* 43 (1986). There is no evidence in the record indicating that "Tunnel Bar" seeks to limit its clientele to a "leather" crowd. None of its many advertisements in the record is expressly directed to a "leather" crowd; nor is there any indication that the publications carrying these ads—for example, *The Advocate* (national gay newsmagazine), *Night and Day* (a weekly gay magazine and calendar), *Pride Guide '85* and *'86* (official guides for lesbian and gay pride week), *Bob Damron's Address Book* (a national listing of gay establishments), *New York Gay Film Festival Guide*—cater to an exclusively "leather" audience. In addition, despite the above description, the listing for "Tunnel Bar" in the *GaYellow Pages* does not contain the designation "L & W" (indicating "Leather/Western"), used to describe a number of other establishments in the directory. *Id.* at 2. The hearings did not elicit testimony indicating that "Tunnel Bar" caters to an exclusively "leather" crowd.

The record does not support the District Court's conclusions that "the clientele which plaintiff seeks to attract are male homosexuals interested in 'lots of leather,'" 652 F.Supp. at 1040; *see also id.* at 1044 n. 2, or that Lobo's "advertising focused on a particular sub-division of the gay male population in Manhattan," *id.* at 1042. On the contrary, the evidence thus far presented shows that "Tunnel Bar", through its extensive advertising in a variety of gay publications, has striven to attract a cross-section of the gay community. And although this cross-section might not be coextensive with defendant's target audience for its Sunday night parties, there is substantial overlap between the two.

Because the denial of the preliminary injunction rests so significantly on a finding unsupported by the record, the denial must be vacated. However, the record is not so compelling as to indicate that the plaintiff must be granted a preliminary injunction. The evidence to date, fairly assessed, would permit the District Court discretion either to grant or deny an injunction, but that discretion must be exercised in the light of factual findings supported by the record. We therefore vacate the order denying the injunction and remand for further proceedings. The District Court may either reconsider the appropriateness of a preliminary injunction, or, if a final record may be expeditiously completed, combine consideration of a preliminary injunction with trial on the merits, Fed.R. Civ.P. 65(a)(2).

Vacated and remanded.