**TRANSAMERICA RENTAL FINANCE CORPORATION, Plaintiff,**

v.

**The RENTAL EXPERTS, et al., Defendants.**

**Civ. No. 3–91–130 (WWE).**

United States District Court, D. Connecticut.

Jan. 10, 1992.

Frank Sziliagyi and Joseph V. Meaney, Cranmore & Fitzgerald, Hartford, Conn., for plaintiff.

William C. Longa, Zeldes Needle and Cooper, Bridgeport, Conn. and Daniel A. Silver, New Britain, Conn., for defendants.

## RULING ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY

EGINTON, District Judge.

Plaintiff has filed an Application pursuant to *Fed.R.Civ.P.* 64 seeking a prejudgment remedy against the Defendants. On December 12, 1991, after two days of hearings, Magistrate Judge Arthur H. Latimer recommended the imposition of a preliminary injunction, which this court will now review *de novo*. Motion papers and the record from the hearings before the Magistrate reveal the following facts:

Plaintiff, Transamerica Rental Finance Corporation ["Transamerica"], entered into a financing agreement in November, 1989 with Defendant, The Rental Experts ["Experts"], whereby Transamerica loaned Experts, a rent-to-own company, $1,000,000 in exchange for a security interest in Expert's inventory, receivables, accounts, equipment and property.

A provision of the agreement assigned to Transamerica the leases on two properties Experts used as its showrooms. Under the agreement, Experts could enjoy full use of the showrooms so long as it was not in default. Upon the occurrence of an enumerated event of default, Transamerica could accelerate the indebtedness and pursue any remedy provided in the Uniform

Commercial Code, including the right to operate and maintain Experts' business.

By early 1991 Experts was in default under the terms of the agreement, and Transamerica declared due the entire unpaid principal amount of $408,864.26. Transamerica commenced this action to recover that amount, and also to take possession of and operate Experts' rent-to-own business. A restraining order was agreed to by the parties in March, 1991, which prevented Experts and other Defendant-guarantors of the Transamerica loan from disposing of the assets of Experts' business other than in the ordinary course of business. The order also allowed Transamerica to conduct quarterly audits of the business.

Magistrate Latimer conducted a hearing on October 22, 1991, and found that Transamerica was entitled to a prejudgment remedy of $525,000 under *Conn.Gen.Stat.* § 52–278a et seq., which represented the unpaid principal amount of the loan plus interest and costs. Experts did not object to this finding. At a subsequent hearing on December 19, 1991, Magistrate Latimer recommended that Transamerica be entitled to injunctive relief pursuant to *Conn. Gen.Stat.* § 42a–9–207 and § 42a–9–503 to secure the prejudgment remedy. The injunction would allow Transamerica to operate and maintain Experts' business, subject to the posting of a $400,000 bond.

Experts now objects to the Magistrate's recommendation of December 19 as being overly broad and contrary to the Second Circuit standard for imposition of a preliminary injunction. For the reasons discussed below, the Magistrate's recommended ruling will be adopted by this court.

## DISCUSSION

### A. Experts' Business

Transamerica argues that an injunction giving it the right to take possession of Experts' business is the only way its prejudgment remedy of $525,000 can be protected. Transamerica presented evidence at the hearings before the Magistrate which, Transamerica argues, supports the conclusion that the business is in a steady rate of decline, and that Transamerica's loan collateral is disappearing.

The evidence presented by Transamerica at the hearings, which was in large measure uncontroverted by Experts, establishes that Experts' business has been in serious trouble for some time. In the rent-to-own business, a proprietor purchases appliances and rents them out to customers for two or three year periods. The customers pay rent in monthly installments, and at the end of the rental period have typically paid three to six times the original purchase price of the appliance. If all monthly payments are made, the customer acquires title to the appliance at the end of the period.

A healthy rent-to-own business typically has less than fifteen percent of its outstanding rental contract receivables delinquent, or more than thirty days past due. By contrast, in 1989 between twenty and thirty percent of Experts' receivables were delinquent, and by October, 1991, this figure had soared to fifty percent.

This increase in delinquent receivables was accompanied by a decrease in revenue, from approximately $60,000 per month in late 1989 to between $35,000 and $45,000 per month in the latter half of 1991. Transamerica's national workout manager testified that a decrease in revenue most often indicates that a rent-to-own business is keeping less inventory on hand to rent.

Transamerica values a rent-to-own business by multiplying the monthly income by a factor of 5.5, based on an industry standard designed to take into account inventory and receivables. Based on this valuation, Experts' business had a value of between $190,000 and $240,000 in late 1991.

### B. Application of the Standard

Under the Second Circuit test for issuance of a preliminary injunction, the moving party has the burden of establishing: (a) irreparable harm; and (b) either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping

decidedly towards the party requesting the preliminary injunctive relief. *See Lobo Enterprises, Inc., v. The Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir.1987).

■ Where the requested injunction is mandatory, rather than prohibitive, an injunction should issue only upon a clear showing that the moving party is entitled to the relief requested. *See Securities and Exch. Comm. v. Unifund Sal*, 910 F.2d 1028, 1039 (2d Cir.1990).

### Irreparable Harm

Transamerica must first show that it is likely to suffer irreparable harm if equitable relief is denied before a decision on the merits can be rendered. Magistrate Latimer noted that this court's calendar would dictate that any decision on the merits of this case would likely be at least a year off, and concluded that in the meantime Experts' business—and Transamerica's collateral—could disappear.

Experts is in default under the loan agreement, having made no payment under the agreement for over a year. In the time between the October 22 and December 19 hearings, Experts and the defendant loan-guarantors were ordered to disclose any assets they could be used to secure the $525,000 prejudgment remedy. Experts and the guarantors could produce no such assets, and the record shows that at this time the only collateral for the prejudgment remedy is Experts' business.

■ The case law applying the Second Circuit test emphasizes that monetary loss alone is insufficient to show irreparable harm. The movant must produce evidence of damage that cannot be rectified by financial compensation. *See Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 33–34 (2d Cir.1991). The classic example of such harm is the bankruptcy of the moving party. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). Here there is no evidence that the failure of Experts to pay Transamerica the $525,000 pre-judgment remedy will result in Transamerica's bankruptcy. Indeed, Transamerica has produced no evidence of the economic consequences of Experts' failure to pay.

Transamerica relies primarily on case law from the First Circuit, which seems to have a more generous view of irreparable harm. The First Circuit has interpreted Supreme Court precedent as allowing a preliminary injunction to enter to protect the plaintiff's damages remedy "when it is shown that the defendant is likely to be insolvent at the time of judgment." *Teradyne, Inc. v. Mostek, Corp.*, 797 F.2d 43, 52–53 (1st Cir.1986) (*citing Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)). A district court in Massachusetts has taken this analysis a step further by holding that an injunction may be appropriate "[w]here an action for damages would be inadequate because the defendant is insolvent or its assets are in danger of depletion and dissipation." *Fleet National Bank v. Rapid Processing Co., Inc.*, 643 F.Supp. 1065, 1066 (D.Mass.1986).

■ The logic of the *Fleet Bank* case is of particular import here. While there is no evidence that Experts will actually be insolvent when a final judgment is rendered by this court, the evidence does show a serious decline in the business over the past two years. Even assuming the current value of Experts' business to be $240,-000, Transamerica is still greatly undersecured. Because the defendants apparently have no assets other than the business, the only way to make Transamerica more secure is for the business to become more profitable, but the evidence points to a slow but steady decline in profits. This clearly seems to be a case where there is a danger of depletion of assets, and Transamerica's damages remedy is in need of protection.

[4] The key question is whether an injunction to protect the damages remedy will pass muster under the Second Circuit standard. It is well established in this Circuit that the purpose of a preliminary injunction is to preserve the *status quo* between two parties. *See Tucker*, 888 F.2d at 972. It would follow that where there is danger of the *status quo* deteriorating in the time between a prejudgment remedy

and a final judgment, an injunction may be appropriate.

The basis underlying the irreparable harm requirement is that equity should not intervene where there is an adequate remedy at law. *See Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir.1986). It is thus critical to inquire whether Transamerica has an adequate remedy at law. There is no question that money could compensate Transamerica for its losses. What is in doubt is Experts' or the guarantors' ability to pay $525,000 or more to Transamerica upon an adverse judgment of this court. If Transamerica could get a final judgment in its favor immediately it would receive at most $240,000 of a $525,000 prejudgment remedy. The irreparability of Transamerica's harm is the danger that this amount will decrease and eventually Transamerica will have no damages remedy.

This court is satisfied that, based on the danger of a dissipation of Experts' assets, Transamerica has met its burden of demonstrating irreparable harm.

### Likelihood of Success on the Merits

■ Transamerica concedes that its application falls under the heightened scrutiny reserved for mandatory injunctions. Transamerica must make a clear showing that it is entitled to the relief it seeks. *See Securities and Exch. Comm.*, 910 F.2d at 1039. Motion papers and the record from the hearings indicate that Transamerica has met this burden. Uncontroverted evidence establishes the existence of a security agreement between the parties, the default of Experts, and the amount of the unpaid balance of the loan.

Experts has brought a counterclaim alleging that Transamerica took advantage of Experts through a scheme by which Transamerica entered into the underlying loan agreement knowing that Experts was in poor financial condition, and in the expectation that Experts would default on the loan and allow Transamerica to assume the business. This claim may ultimately prove to have merit, although the record as yet indicates scant support for such assertions.

Experts argues that to adopt the recommended injunction would effectively decide its counterclaim. Faced with the strong evidence of the merits of Transamerica's claim, this court is unwilling to allow the counterclaim to stand in the way of an injunction. To hold otherwise would allow any defendant to avoid injunctive relief simply by posing a well-crafted counterclaim and then arguing that it cannot be "decided" by the injunction.

If the counterclaim is ultimately successful, Experts will be entitled to damages, as would any claimant. Under the Magistrate's recommended injunction, Transamerica is required to post a $400,000 bond, which may approximately double the estimated value of the business. In addition, Transamerica is required to operate the property in a commercially reasonably manner and must preserve the value of the business pending final judgment under *Conn.Gen.Stat.* § 42a–9–207.

### C. The Scope of the Injunction

■ The injunction requested by Transamerica goes beyond a mere freeze on assets and allows it to take over an entire business. The injunction approved by the district court in *Fleet Bank* enjoined the defendants from disposing of assets, but afforded the plaintiffs no operative control over defendant's business. *See Fleet National Bank*, 643 F.Supp. at 1067. In fashioning an injunction, the court should make the relief as narrow as required to attain the desired result.

There is currently in effect a restraining order which prohibits Experts from disposing of any assets of the business other than in the ordinary course of business. Experts argues that if any injunction is to enter, it should be in the form of a continuation of the restraining order, and not in the broader form suggested by Transamerica.

■ The court finds that the broad injunction recommended by the magistrate is appropriate due to the particular nature of the rent-to-own business. A restriction on disposal of assets does not protect Transamerica because the value of Experts' busi-

ness can decline precipitously without the disposal of any assets. As noted above, in a rent-to-own business the key to profit is the number of non-delinquent rental contract receivables. If Experts rents fewer appliances and has more delinquent receivables, then the value of its business will decline with no asset disposal. The record indicates that this is exactly what has happened to Experts in the past two years.

## CONCLUSION

For the reasons set forth above, the Recommended Order of the Magistrate is hereby ADOPTED. An Order shall enter Granting the motion by Plaintiff, Transamerica Rental Finance Corporation for a preliminary injunction.

SO ORDERED.