GUCCI AMERICA, INC., Plaintiff,

v.

Default Judgment and Paulette TYR-
RELL–MILLER, a/k/a Paulette Mil-
ler individually, d/b/a Realdealhand-
bags.com, d/b/a Real Deal Handbags,
d/b/a Authenticstyle4u.com, d/b/a Au-
thentic Style, d/b/a M. Miller, and
Does 1–10, Defendants.

No. 08 Civ. 4760(RJS).

United States District Court,
S.D. New York.

Nov. 19, 2008.

Complaint to Michael Miller, a co-resident of suitable age and discretion, at Defendant's dwelling, and by mailing a copy of the Summons and Complaint on August 5, 2008 to the dwelling at 65 Edgewater Avenue, North East, Maryland 21901. Proof of service was filed with this Court on August 27, 2008.

Defendant has failed to answer or appear in this action. On September 24, 2008, the Court issued an Order to Show Cause as to why default judgment should not be entered against Defendant, directing her to submit a written response by October 23, 2008, and to appear for a hearing on October 31, 2008. Since then, Defendant has not made any submission to the Court and did not appear at the October 31, 2008 hearing.

 "Entry of a default judgment is appropriate when the 'adversary process has been halted because of an essentially unresponsive party.'" *Cadlerock Joint Venture, L.P. v. Prado*, No. 07 Civ. 1207(JS)(WDW), 2008 WL 4561611, at *2 (E.D.N.Y. Oct. 7, 2008) (quoting *Dae Woo Kim v. City of New York*, No. 90 Civ. 1487(KMW), 1990 WL 83465, at *2 (S.D.N.Y. June 13, 1990)); *see also Ontel Prods. Corp. v. Amico Int'l. Corp.*, No. 07 Civ. 7356(JGK)(FM), 2008 WL 4200164, at *1 (S.D.N.Y. Aug. 19, 2008). By failing to respond or appear in the current action, the Court finds that Defendant has defaulted.

John Macaluso, Gibney, Anthony & Flaherty, LLP, New York, NY, for Plaintiff.

## DEFAULT JUDGMENT AND ORDER

RICHARD J. SULLIVAN, District Judge:

On May 21, 2008, Plaintiff commenced this action by filing a Summons and Complaint. On July 14, 2008, Plaintiff served a copy of the Summons and Complaint to Paulette Miller ("Defendant")[1] by personally delivering a copy of the Summons and

### I. Liability

 Plaintiff alleges two counts in this action, a count for trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114, and a

---

1. Defendant Paulette Miller conducts business through various aliases and websites, which are also named as Defendants in the Complaint, along with Does 1–10. (*See* Compl. ¶¶ 3; 5–6.) Recognizing the existence of these other Defendants, the Court will refer to Paulette Miller as the Defendant throughout this Default Judgment and Order.

count for false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). A plaintiff's factual allegations, except those relating to damages, must be accepted as true where, as here, the defendant defaults. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997) ("[A] default judgment deems all the well-pleaded allegations in the pleadings to be admitted."); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir.1993); *Time Warner Cable v. Barnes*, 13 F.Supp.2d 543, 547 (S.D.N.Y.1998) ("Upon entry of a default judgment ... a defendant admits every well-pleaded allegation of the Complaint except those relating to damages." (internal quotation omitted)). Thus, the sole issue before the Court is whether Plaintiff has provided adequate support for the relief it seeks. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999).

The Court finds that the facts alleged in the Complaint support liability under both of these counts. "To succeed on ... Lanham Act claims, [a Plaintiff] must show that it has a valid mark that is entitled to protection under the Lanham Act and that [the Defendant's] actions are likely to cause confusion with [Plaintiff's] mark." *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993) and 15 U.S.C. §§ 1114(1) & 1125(a)(1)(A)); *see also Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 454 (S.D.N.Y. 2005); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003). Plaintiff asserts that it is the owner of fifteen (15) federally registered and common law trademarks (the "Gucci Marks"). (*See* Compl. ¶ 7.) This satisfies the first prong of the test. *See Gruner*, 991 F.2d at 1076 ("[A] mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product.").

To satisfy the second prong, Plaintiff alleges that Defendant "is the moving and conscious force behind the operations of Realdealhandbags.com [and] Authenticstyle4u.com." (Compl.¶ 3.) Plaintiff further alleges that on these websites, "Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale counterfeit products, including at least handbags and other goods bearing trademarks which are exact copies of one or more of the Gucci Marks. Specifically, upon information and belief, Defendants are using one or more of the Gucci Marks in the same stylized fashion for different and inferior quality goods." (*Id.* ¶ 16.) Further, "Defendants ... are actively using, promoting, and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge that such goods will be mistaken for the genuine high quality products offered for sale by Gucci. The net effect of Defendants' actions will be to result in the confusion of consumers who will believe Defendants' Counterfeit Goods are genuine goods originating from and approved by Gucci." (*Id.* ¶ 17.) In addition to these allegations, Plaintiff provides evidence that its investigator, Robert Holmes, purchased a counterfeit Gucci handbag from one of Defendant's websites (*see* Holmes Decl. ¶¶ 6–11); the handbag was confirmed by Plaintiff's Intellectual Property Manager ("Manager") to be a "non-genuine counterfeit product" (Murray Decl. ¶¶ 12; 14.) Based on a visual inspection of Defendant's websites, the Manager further found that the products offered for sale on the websites were non-genuine counterfeit products. (*See id.* ¶¶ 13–15.)

■ Accepting these allegations as true, the Court finds that the Complaint alleges sufficient facts to demonstrate that a likelihood of confusion exists, since "counterfeits, by their very nature, cause confusion." *Duty Free Apparel,* 286 F.Supp.2d at 287; *Topps Co., Inc. v. Gerrit J. Verburg Co.,* No. 96 Civ. 7302(RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996); *see also Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."). The Court therefore holds that Defendant is liable for trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114, and false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## II. Injunctive Relief

■ "A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784(RMB)(GWG), 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007) (quoting *Kingvision Pay–Per–View Ltd. v. Lalaleo,* 429 F.Supp.2d 506, 516 (E.D.N.Y.2006)); *see also La Barbera v. Les Sub–Surface Plumbing, Inc.,* No. 06 Civ. 3343(NG)(KAM), 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008). Under § 34 of the Lanham Act, a district court has "the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. Thus, the first prong of the inquiry is satisfied.

■ To meet the second prong, in order "[t]o obtain a permanent injunction, [the requesting party] must demonstrate (1) actual success on the merits and (2) irreparable harm." *Duty Free Apparel,* 286 F.Supp.2d at 290. First, the Court finds that "plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability." *Gucci Am., Inc. v. MyReplicaHandbag.com,* No. 07 Civ. 2438(JGK), 2008 WL 512789, at *5 (S.D.N.Y. Feb. 26, 2008). Second, "[i]n a trademark case, irreparable injury is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *DCH Auto Group (USA) Inc. v. Fit You Best Automobile,* No. 05 Civ. 2973, 2006 WL 279055, at *9 (E.D.N.Y. Jan. 10, 2006) (quoting *Lobo Enters., Inc. v. Tunnel, Inc.,* 822 F.2d 331, 333 (2d Cir.1987)); *see also Duty Free Apparel,* 286 F.Supp.2d at 290 ("[I]n this Circuit, a showing of likelihood of confusion establishes irreparable harm."). Given the finding above that a likelihood of confusion exists, the Court holds that this second prong is satisfied as well.

■ The Court therefore finds that the granting of injunctive relief, preventing Defendant from continuing in her counterfeiting and infringing activities, is proper. However, the Court declines to issue an injunction transferring the domain names Realdealhandbags.com and Authenticstyle4u.com to Plaintiff at this time, and will not do so unless further proof is submitted that Defendant continues to sell the infringing products on these websites in violation of this Default Judgment. *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.,* 331 F.Supp.2d 228, 234 (S.D.N.Y. 2004) (modifying injunction to require that defendant transfer two domain names to

plaintiff only after defendant "persistently and overtly flouted" the terms of the default judgment).

### III. Monetary Damages

In addition to injunctive relief, Plaintiff asks for statutory monetary damages. "[A]lthough a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (i) determined the proper rule for calculating damages on the claim, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment." *Langenberg v. Sofair*, No. 03 Civ. 8339(KMK)(FM), 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006) (internal citations omitted).

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $500 nor more than $100,000 per counterfeit mark per type of goods. *See* 15 U.S.C. § 1117(c)(1). Further, if the Court finds that the use of the counterfeit mark was willful, then the Court may impose damages above the maximum limit, up to $1,000,000 per counterfeit mark per type of goods sold. *Id.* § 1117(c)(2). Section 1117(c) "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 (S.D.N.Y.2004) (internal citation and quotation marks omitted).

The Court notes that Defendant has failed to respond to three cease and desist letters sent by Plaintiff, dated January 29, 2008, February 4, 2008, and February 13, 2008. (Murray Decl. ¶¶ 16–17.) Further, it appears that Defendant did not alter her behavior after receiving these letters. A review of Defendant's website operating under the domain name Realdealhandbags.com, as it appeared on December 6, 2007, before Defendant received any cease and desist letters, revealed that Defendant was offering for sale twenty-five different styles of handbags priced between $500.00 and $1,150.00 each, all bearing counterfeits of the Gucci Marks. (*See* Holmes Decl. Exs. 1–2.) A review of Defendant's same website as it appeared on February 22, 2008, after Defendant received the three cease and desist letters, revealed that Defendant was offering for sale thirty different styles of handbags priced between $375.00 and $550.00 each, all bearing counterfeits of the Gucci Marks. (*See* Murray Decl. Ex. 2.) A third review of Defendant's same website as it appeared on May 19, 2008, and a fourth review of Defendant's website as it appeared on September 9, 2008, revealed that Defendant was offering for sale thirty different styles of handbags priced between $375.00 and $550.00 each, all bearing counterfeits of the Gucci Marks. (*See* Gigante Decl. Exs. 1–2.) This series of events demonstrates that Defendant's conduct was willful, as she persisted in selling counterfeit goods for months after being informed of her infringement. *Cf. Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, No. 06 Civ. 7827(HB)(GWG), 2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008) ("The defendant's willfulness in violating the trademark law is established by virtue of its failure to controvert the circumstantial evidence of willfulness alleged in the complaint—especially its failure to respond to plaintiff's cease-and-desist letters."); *Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06 Civ. 6403(SLT)(SMG), 2008 WL 2884761, at *3 (E.D.N.Y. July 23,

2008) ("Plaintiff also alleges that defendant's copyright and trademark infringement was committed willfully because it continued its actions despite being apprised of plaintiff's registered copyrights and its infringing conduct. These allegations, when deemed admitted, are sufficient to find that defendant's conduct was willful." (citations omitted)). Further, "[w]hen a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer." *Malletier v. WhenU.com, Inc.*, No. 05 Civ. 1325(LAK), 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007); *see also Rodgers v. Anderson*, No. 04 Civ. 1149(RJH)(AJP), 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005); *Tiffany v. Luban*, 282 F.Supp.2d 123, 124–25 (S.D.N.Y. 2003)

The Court thus finds that Defendant's conduct is willful. Since fifteen trademarks are involved in this case (*see* Compl. ¶ 7), the maximum statutory damages that this Court could award would be $15 million. *Cf. Lorillard Tobacco, Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 WL 1775512, at *3 (N.D.Ill. Apr. 17, 2008) ("[A] plaintiff may recover $1 million in statutory damages for each trademark violated even if only one product is involved."). Notwithstanding this upper limit, Plaintiff asserts that $1,282,837.50 in statutory damages is an appropriate award. (*See* Macaluso Aff. ¶ 31.) Such an award would grant Plaintiff an amount of $85,552.50 for each of the fifteen registered Gucci Marks. It is worth noting that this amount appears to be below the average award issued by other courts in this district in trademark infringement cases. *See, e.g., MyReplicaHandbag.com*, 2008 WL 512789, at *5 (awarding $100,000 per infringed mark); *Pitbull Prods.*, 2007 WL 3287368, at *4 (awarding $250,000 per infringed mark); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03 Civ. 2132(GBD)(KNF), 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (awarding statutory damages of $125,000 per infringed mark); *Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179(KMW)(RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) (awarding $1,000,000 per infringed mark for each of four Nike trademarks in t-shirts, sweatshirts and polo shirts, for a total of $12,000,000); *Rodgers v. Anderson*, 2005 WL 950021, at *4 (awarding $250,000 for one infringed mark); *Duty Free Apparel*, 315 F.Supp.2d at 520 n. 8 (awarding $2,000,000 for two infringed marks); *Phillip Morris USA, Inc. v. Marlboro Express*, No. 03 Civ. 1161(CPS), 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005) (awarding $4,000,000 for four infringed marks).

Finding guidance in an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement, courts have considered the following factors in setting statutory damage awards under the Lanham Act: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Malletier*, 2007 WL 257717, at *4 (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotation marks omitted). Considering these factors—in particular, factor six and Defendant's failure to appear in the instant action—the Court finds that the award of $3 million, or $200,000 per infringed mark, is appropriate to accomplish the dual goals of compensation and deterrence, and in particular, to emphasize that the trademark laws and court

proceedings are not mere incidental costs to doing business in the profitable counterfeit trade. *See Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359(DLC)(FM), 2002 WL 596354, at \*5 (S.D.N.Y. Apr. 17, 2002) (noting that where "a defendant is shown to have acted wilfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others").

## IV. Decree

For the foregoing reasons, **IT IS HEREBY ORDERED AND ADJUDGED** that a final Default Judgment be entered in favor of the Plaintiff, Gucci America, Inc., a New York corporation, with its principal place of business in the United States located at 685 Fifth Avenue, New York, New York 10022, and against the Defendant, Paulette Tyrrell–Miller, a/k/a Paulette Miller, last known to be residing at 65 Edgewater Avenue, North East, Maryland 21901, on all Counts.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Paulette Tyrrell–Miller, a/k/a Paulette Miller, and her officers, agents, servants, employees and attorneys, and all persons in active concert and participation with her are hereby restrained and enjoined from:

(a) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Gucci Marks;

(b) using the Gucci Marks in connection with the sale of any unauthorized goods;

(c) using any logo, and/or layout which may be calculated to falsely advertise the services or products of Realdealhandbags.com, Real Deal Handbags, Authenticstyle4u.com, Authentic Style, M. Miller and/or any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Gucci;

(d) falsely representing herself as being connected with Gucci through sponsorship or association;

(e) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Realdealhandbags.com, Real Deal Handbags, Authenticstyle4u.com, Authentic Style, M. Miller and/or any other website or business, are in any way endorsed by, approved by, and/or associated with Gucci;

(f) using any reproduction, counterfeit, copy, or colorable imitation of the Gucci Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Realdealhandbags.com, Real Deal Handbags, Authenticstyle4u.com, Authentic Style, M. Miller and/or any other website or business, including, without limitation handbags;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Realdealhandbags.com, Real Deal Handbags, Authenticstyle4u.com, Authentic Style, M. Miller and/or any other website or business, goods as being those of Gucci or in any way endorsed by Gucci;

(h) offering such goods in commerce;

(i) otherwise unfairly competing with Gucci;

(j) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying

of all unauthorized products which infringe the Gucci Marks; and

(k) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

**IT IS FURTHER ORDERED AND ADJUDGE:**

1. Pursuant to 15 U.S.C. § 1117(c) Gucci is awarded statutory damage against the Defendant, Paulette Tyrrell–Miller, a/k/a Paulette Miller, in the amount of three million dollars ($3,000,000.00).

2. Gucci is also entitled to post-judgment interest, pursuant to 28 U.S.C. § 1961(a). The Clerk of Court shall enter judgement accordingly and this case shall be closed.

SO ORDERED.